EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lcdo. Thomas Rivera Schatz

    Peticionario

      v.

Estado Libre Asociado de Pue[rto] Rico, por conducto del Secreta[rio] de Justicia, Hon. César Miran[da]; Colegio de Abogados de Puerto Ri[co], por conducto de su President[a] Lcda. Ana Irma Rivera Lassén

    Recurridos

---------------------------

Asociación de Abogados de Pue[rto] Rico; Héctor R. Ramos Díaz; Raf[ael] Sánchez Hernández

    Peticionarios

      v.

Colegio de Abogados y Abogadas [de] Puerto Rico; Estado Libre Asoci[ado] de Puerto Rico

    Recurridos

---------------------------

John E. Mudd y John A. Stewart

    Peticionarios

      v.

Alejandro García Padilla, Estado Libre Asociado de Puerto Rico; Colegio de Abogados de Puerto Rico

    Recurridos

Evelyn Aimée De Jesús Rodríguez

    Interventora

2014 TSPR 122

191 DPR ____

Número del Caso:
        CT-2014-8
        CT-2014-9
        CT-2014-10

Fecha: 16 de octubre de 2014

**CT-2014-8**

Abogados de la Parte Peticionaria:

        Lcdo. Eliezer Aldarondo Ortiz
        Lcda. Rosa Campos Silva
        Lcdo. Eliezer Aldarondo López

Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Tanaira Padilla Rodríguez
        Subprocuradora General

        Lcda. Karla Pacheco Álvarez
        Subprocuradora General

        Lcda. Mónica Cordero Vázquez
        Procuradora General Auxiliar

**CT-2014-9**

Abogados de la Parte Peticionaria:

        Lcdo. Ramón L. Rosario Cortés
        Lcdo. Andrés Córdova
        Lcdo. Ferdinand Ocasio
        Lcdo. Francisco González Magaz

**CT-2014-10**

Abogados de la Parte Peticionaria:

        Lcdo. John Mudd
        Lcdo. John A. Stewart

**Colegio de Abogados:**

        Lcdo. Efraín Guzmán Mollet


**Representación Legal de los Interventores:**

        Lcdo. Alejandro J. Figueroa Colón

        Interventores:

        Lcdo. Carlos Rivera Justiniano
        Lcdo. Carlos Pérez Toro
        Lcdo. Juan M. Gaud Pacheco
        Lcdo. Félix Colón Serrano
        Lcda. María Fullana Hernández
        Lcdo. Carmelo Ríos Santiago
        Lcdo. Miguel Romero Lugo
        Lcdo. Mario Santurio González

Lcdo. Carlos Sagardía Abreu
Lcdo. Luis Dávila Colón
Lcdo. José Meléndez Ortiz
Lcda. Valerie Rodríguez Erazo
Lcdo. Elías Sánchez Sifonte
Lcda. Evelyn Aimée De Jesús Rodríguez

***Amicus Curiae:***

**Colegio de Trabajadores Sociales**
Lcdo. Fernando Olivero Barreto
**Servicios Legales de Puerto Rico**
Lcdo. Guillermo Ramos Luiña
**Consejo Interdisciplinario de Colegios
y Asociaciones Profesionales**
Lcda. Nelian Cruz Díaz
Lcdo. Andrés Montañez Coss
Lcdo. Edwin Rivera Cintrón
**Colegio de Tecnólogos Médicos**
Lcdo. Francisco G. Bruno
Lcdo. Henry Freese
Lcda. Yahaira de la Rosa Algarín

Materia: Certificación Intrajurisdiccional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lcdo. Thomas Rivera Schatz<br><br>        Peticionario<br><br>             v.<br><br>Estado Libre Asociado de Puerto Rico, por conducto del Secretario de Justicia, Hon. César Miranda; Colegio de Abogados de Puerto Rico, por conducto de su Presidenta, Lcda. Ana Irma Rivera Lassen<br><br>        Recurridos | CT-2014-0008 |
| ----------------------------- | |
| Asociación de Abogados de Puerto Rico; Héctor R. Ramos Díaz; Rafael Sánchez Hernández<br><br>        Peticionarios<br><br>             v.<br><br>Colegio de Abogados y Abogadas de Puerto Rico; Estado Libre Asociado de Puerto Rico<br><br>        Recurridos<br><br>Carlos Rivera Justiniano, Carlos Pérez Toro, Juan M. Gaud Pacheco, Félix Colón Serrano, María Fullana Hernández, Carmelo Ríos Santiago, Miguel Romero Lugo, Mario Santurio González, Carlos Sagardía Abreu, Luis Dávila Colón, José Meléndez Ortiz, Valerie Rodríguez Erazo y Elías Sánchez Sifonte<br><br>        Interventores | CT-2014-0009<br><br><br><br><br><br><br><br>CT-2014-0010 |
| ----------------------------- | |
| John E. Mudd y John A. | |

Stewart

    Peticionarios

        v.

Alejandro García Padilla,
Estado Libre Asociado de
Puerto Rico; Colegio de
Abogados de Puerto Rico

    Recurridos

Evelyn Aimée De Jesús
Rodríguez

    Interventora

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 16 de octubre de 2014.

Con el voto afirmativo de seis (6) miembros de este Tribunal, hoy invalidamos parte del proceder legislativo que instituyó nuevamente el requisito de colegiación obligatoria para la clase togada de Puerto Rico.[1] Mediante los casos de epígrafe este Tribunal está llamado a revisitar y, finalmente, disponer de una controversia que en los pasados años ha mantenido a la clase togada de Puerto Rico a la merced de la incertidumbre. Específicamente, la controversia de autos nos invita a ejercer nuestro Poder Inherente para reglamentar la profesión legal y, al amparo de este, determinar si asociarse a una entidad particular debe ser un requisito

---

[1] A pesar de que el compañero Juez Asociado señor Estrella Martínez tituló su opinión como una "disidente", la realidad es que concurre con declarar inconstitucionales los Artículos de la Ley Núm. 109-2014 que requieren la colegiación obligatoria en Puerto Rico. Por lo tanto, existen seis (6) votos para declarar inconstitucionales estas secciones.

*sine qua non* para ejercer legítimamente la abogacía en Puerto Rico. Por los fundamentos que expondremos a continuación, contestamos en la negativa.

Con nuestro proceder, tomamos el timón de la profesión legal y ponemos punto final al vaivén incierto en el que ha navegado la clase togada por demasiado tiempo. La decisión que hoy emitimos les garantiza tanto a aquellos letrados que elijan asociarse a una agrupación particular, como a aquellos que opten por no hacerlo, la libertad que como abogados vienen llamados a defender y que como ciudadanos, indiscutiblemente, merecen se les respete.

La verdadera y completa libertad yace en las fronteras de la relación simbiótica que la nutre: la autonomía de disfrutar de nuestra libertad individual y el deber de permitir que los demás disfruten de la suya. Como mínimo, este principio debería guiarnos al momento de ejercer nuestro Poder Inherente para regular la profesión legal y disponer de la controversia de autos. De lo contrario, nuestra función como máximos intérpretes de la Constitución de Puerto Rico no sería más que la de un cuerpo inútil divagando en una idea vacía.

Con todo lo anterior en mente, pasemos a exponer los hechos que generaron la controversia de autos.[2]

---

[2] Ante las expresiones disidentes que se emiten, expresamos que esta Opinión fue circulada a todos los integrantes de este Tribunal el 1 de octubre de 2014. Al momento de circular la Opinión, el Tribunal acordó certificar estos casos hoy 16 de octubre de 2014. Es decir, los integrantes de este Tribunal contaron con más de dos (2) semanas para estudiar la Opinión, emitir sus votos o escribir sus correspondientes

I

El cuadro fáctico que dio génesis a la controversia que hoy estamos llamados a resolver se viene forjando desde el año 1932. Fue para esa fecha que mediante la Ley Núm. 43 de 14 de mayo de 1932, 4 LPRA sec. 771 *et seq.*, se creó la entidad conocida como el Colegio de Abogados de Puerto Rico[3] (en adelante Colegio o Colegio de Abogados) y se instituyó la colegiación obligatoria como requisito para ejercer la abogacía en nuestra jurisdicción.[4] Es decir, para ejercer válidamente la profesión legal en Puerto Rico se les impuso a los letrados la obligación de afiliarse al Colegio de Abogados. Además, la licencia de los abogados estaba supeditada al pago de aportaciones económicas obligatorias en concepto de cuotas profesionales al Colegio. De modo que un abogado no tenía otra opción que pertenecer al Colegio de Abogados, pues de lo contrario se enfrentaría a un proceso de desaforo que podía redundar en la pérdida de su único medio para sustentarse económicamente.

---

opiniones. Como se puede apreciar, tres (3) integrantes de este Tribunal emitieron Opiniones particulares.

[3] Para un estudio detallado sobre la historia del Colegio de Abogados previo a la aprobación de la Ley Núm. 43 de 14 de mayo de 1932, 4 LPRA sec. 771 *et seq.*, véase, G. Figueroa Prieto, *Propuesta para la Reglamentación de la Conducta Profesional en Puerto Rico,* 81 Rev. Jur. UPR 1 (2012).

[4] La colegiación obligatoria propuesta por la Ley Núm. 43, *supra*, estaba condicionada a que una mayoría de los letrados así la aceptara en la celebración de un referéndum convocado por el referido estatuto. Véase el Art. 1 de la Ley Núm. 43, *supra*. Véase, además, *Colegio de Abogados de P.R. v. Schneider*, 112 DPR 540, 545 (1982) y G. Figueroa Prieto, *supra*, pág. 7.

Aproximadamente cinco (5) décadas más tarde, este Tribunal tuvo ante su consideración la controversia en cuanto a la constitucionalidad del sistema de colegiación obligatoria que había regido a la clase togada desde que se instituyó en el año 1932. En lo que comúnmente se conoce como la "litigación Schneider"[5] se cuestionó por primera vez en Puerto Rico el poder de la Asamblea Legislativa para imponer la colegiación obligatoria como requisito para ejercer la profesión legal en nuestra jurisdicción. En aquella ocasión, el Colegio de Abogados presentó Querellas contra noventa y nueve (99) letrados que incumplieron con el pago de la cuota anual que se había establecido conforme a la Ley Núm. 43, *supra*. Los querellados alegaron, en síntesis, que la colegiación obligatoria y el pago de cuotas al Colegio eran inconstitucionales por infringir su derecho constitucional a la libre expresión y a la libertad de asociación. Como discutiremos más adelante, este Tribunal aceptó en ese momento la validez del requisito de colegiación obligatoria en Puerto Rico.

---

[5] *Íd.* en la pág. 13. Véanse, además, *Schneider v. Colegio de Abogados de Puerto Rico,* 546 F. Supp. 1251 (D.P.R. 1982); *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17 (1er Cir. 1982); *Schneider v. Colegio de Abogados de Puerto Rico*, 565 F. Supp. 963 (D.P.R. 1983); *Schneider v. Colegio de Abogados de Puerto Rico*, 572 F. Supp. 957 (D.P.R. 1983); *Romany v. Colegio de Abogados de Puerto Rico*, 742 F.2d 32 (1er Cir. 1984); *Schneider v. Colegio de Abogados de Puerto Rico*, 670 F. Supp. 1098 (D.P.R. 1987); *Schneider v. Colegio de Abogados de Puerto Rico*, 682 F. Supp. 674 (D.P.R. 1988); *Schneider v. Colegio de Abogados de Puerto Rico,* 917 F. 2d 620 (1er Cir. 1990) y *Schneider v. Colegio de Abogados de Puerto Rico,* 947 F. Supp. 34 (D.P.R. 1996).

Luego de *Col. de Abogados de P.R. v. Schneider, supra,* y su progenie -litigación compleja que perduró por más de una década- en Puerto Rico imperó el *status quo* de la colegiación obligatoria hasta el 2009. En ese año, la Asamblea Legislativa aprobó dos (2) proyectos de Ley que subsiguientemente se convirtieron en la Ley Núm. 121-2009[6] y la Ley Núm. 135-2009.[7] Los referidos estatutos enmendaron la Ley Núm. 43, *supra*, para *inter alia*, establecer un sistema de colegiación voluntaria en nuestra jurisdicción.

Por entender que estos estatutos eran inconstitucionales, el Colegio de Abogados acudió a los Tribunales de Puerto Rico para impugnar su validez. Luego de varias incidencias en los tribunales de menor jerarquía y por estar inconformes con una Sentencia dictada por el Tribunal de Apelaciones, el 12 de julio de 2010 el Colegio de Abogados presentó ante esta Curia un recurso de *certiorari*. No obstante, mediante Resolución emitida el 17 de marzo de 2011, una Mayoría de este Tribunal denegó expedir el recurso presentado por el Colegio. En aquella ocasión reiteramos el Poder Inherente de este Tribunal para regular la profesión legal en Puerto Rico y establecimos que "[l]a variación de la colegiación —de obligatoria a voluntaria— no elimina el Colegio, no contradice ninguna pauta establecida en el ejercicio de nuestro rol como ente que reglamenta la profesión legal ni soslaya el axioma de la separación de poderes, base de

---

[6] 4 LPRA secs. 772n., 773-755, 780-781, 783, 2011 y 2021.
[7] 4 LPRA secs. 772n., 773-774 y 777-778.

nuestro sistema republicano de gobierno". *Col. de Abogados v. E.L.A.*, 181 DPR 135, 136 (2011), *certiorari denegado, Puerto Rico Bar Ass´n v. Commonwealth of Puerto Rico*, 132 S. Ct. 1535 (2012). Asimismo, establecimos como argumento adicional que la "limitación significativa de la libertad a no asociarse es constitucional solamente si el Estado demuestra un interés gubernamental apremiante que la hace necesaria". *Íd.*

Aproximadamente cinco (5) años después de que los abogados en Puerto Rico adquirieran la libertad de elegir asociarse a cualquier entidad o a ninguna, y no empece lo intimado por una Mayoría de esta Curia en la Resolución emitida en el caso *Col. de Abogados v. E.L.A., supra,* los cuerpos legislativos optaron por aprobar el P. de la C. 1366. Con el aval del actual Gobernador de Puerto Rico, el 28 de julio de 2014 ese proyecto se convirtió en la Ley Núm. 109-2014. *Inter alia*, y en extrema síntesis, la Ley Núm. 109-2014 derogó la Ley Núm. 121-2009, *supra*, y la Ley Núm. 135-2009, *supra*, y reinstaló el sistema de colegiación obligatoria como requisito para que los miembros de la clase togada puedan ejercer válidamente la profesión legal en Puerto Rico.

El mismo día en que se aprobó el referido estatuto, el Lcdo. Thomas Rivera Schatz presentó ante el Tribunal de Primera Instancia, Sala de San Juan, una Demanda contra el Gobierno de Puerto Rico y el Colegio de Abogados. En esta solicitó que se declarara la inconstitucionalidad de la

Ley Núm. 109-2014. Adujo, en esencia, que ese estatuto infringe su derecho constitucional a la libertad de asociación y expresión. Además, arguyó que esta contraviene el Principio de Separación de Poderes toda vez que usurpó la facultad inherente de este Tribunal para reglamentar la profesión legal. Luego de presentar su reclamo ante el foro primario, el licenciado Rivera Schatz presentó ante esta Curia un *Recurso de Certificación Intrajurisdiccional*[8] y una *Moción Urgente para que se paralicen los procedimientos en el Tribunal de Primera Instancia al amparo de la regla 28(A) del reglamento del Tribunal Supremo*. Mediante Resolución emitida el 30 de julio de 2014, expedimos el auto solicitado y paralizamos los efectos del estatuto impugnado.[9]

De igual modo, el 29 de julio de 2014 la Asociación de Abogados de Puerto Rico y los licenciados Héctor Ramos Díaz y Rafael Sánchez Hernández presentaron en el Tribunal de Primera Instancia, Sala de San Juan, otra Demanda contra el Gobierno de Puerto Rico y el Colegio de Abogados. En esta solicitaron igualmente que se declarara la inconstitucionalidad de la Ley Núm. 109-2014. En apoyo de su petitorio esbozaron esencialmente los mismos argumentos vertidos por el licenciado Rivera Schatz en su Demanda. Al día siguiente estos acudieron ante nos

---

[8] El 30 de julio de 2014 el Estado se opuso a la expedición del auto presentado por el licenciado Rivera Schatz.

[9] El Estado presentó una *Urgente Solicitud de Reconsideración* la cual denegamos mediante Resolución emitida el 5 de agosto de 2014.

mediante un *Recurso de Certificación Intrajurisdiccional.* Evaluado el mismo, el 1 de agosto de 2014 expedimos el recurso de certificación presentado y lo consolidamos con el caso CT-2014-8.

En el ínterin se presentaron varias solicitudes de intervención por parte de varios abogados y abogadas, las cuales fueron declaradas con lugar luego de que estos subsanaran unas deficiencias señaladas por este Tribunal debido al incumplimiento con la Regla 21.4 de las de Procedimiento Civil de 2009. 32 LPRA Ap. V. Las partes interventoras en este caso son las siguientes: Carlos Rivera Justiniano, Carlos Pérez Toro, Juan M. Gaud Pacheco, Félix Colón Serrano, María Fullana Hernández, Carmelo Ríos Santiago, Miguel Romero Lugo, Mario Santurio González, Carlos Sagardía Abreu, Luis Dávila Colón, José Meléndez Ortiz, Valerie Rodríguez Erazo, Elías Sánchez Sifonte y Evelyn Aimée De Jesús Rodríguez.

A su vez, los licenciados John E. Mudd y John A. Stewart presentaron una Demanda el 28 de julio de 2014 en la cual también cuestionaron la constitucionalidad de la Ley Núm. 109-2014. Posteriormente, el 8 de agosto de 2014 estos comparecieron ante nos mediante un *Recurso de Certificación Intrajurisdiccional.* Por su estrecha relación, el 12 de agosto de 2014 expedimos el auto y

ordenamos su consolidación con los demás casos certificados.[10]

Por otro lado, ante el interés público de la controversia involucrada en los casos de autos, hemos contado con la participación en calidad de *amici curiae* del Colegio de Tecnólogos Médicos de Puerto Rico, el Consejo Interdisciplinario de Colegios y Asociaciones Profesionales, el Colegio de Profesionales del Trabajo Social, Servicios Legales de Puerto Rico, Inc. y Pro Bono, Inc.

Tras concluir el trámite ordenado por este Tribunal, en los casos de autos se presentaron las alegaciones y sus correspondientes alegaciones responsivas. Aunque las partes recurridas aceptaron algunos hechos y negaron otros, no existe controversia en cuanto a los tres (3) **hechos materiales** que son necesarios para resolver la controversia de autos. Estos son: (1) que al aprobarse la Ley Núm. 109-2014 se incluyeron varias disposiciones que exigen que para practicar la profesión legal en Puerto Rico todos los abogados deben afiliarse al Colegio de Abogados y Abogadas de Puerto Rico; (2) que todos los peticionarios y las partes interventoras son abogados admitidos a la profesión en Puerto Rico y (3) que estos han declarado, por distintas razones, que no desean afiliarse al Colegio de Abogados.

---

[10] El Estado presentó una *Urgente Solicitud de Reconsideración* la cual denegamos mediante Resolución emitida el 19 de agosto de 2014.

Ante estos hechos materiales que no están en controversia y con el beneficio de la comparecencia de las partes, los interventores y los *amici curiae*, estamos en posición de resolver sin ulterior trámite la controversia antes descrita.

## II

La médula de la controversia que nos corresponde resolver se reduce a examinar si el sistema de colegiación obligatoria es compatible con lo que esta Curia, al amparo de nuestro Poder Inherente para reglamentar la profesión legal, entiende debe ser un requisito para que los abogados ejerzan legítimamente su profesión en Puerto Rico. Para contestar esta interrogante debemos examinar, *inter alia*, la Doctrina de Separación de Poderes, base sobre la cual se edifica nuestro poder para regular la abogacía en sus variados aspectos.

Recientemente este Tribunal hizo un recuento extenso sobre la preeminencia de la Doctrina de Separación de Poderes en nuestro ordenamiento Constitucional. Véase, *AAR, Ex parte,* 187 DPR 835 (2013). En aquella ocasión, profundizamos en cuanto a "los fundamentos de esa doctrina y vimos cómo esta es parte intrínseca de nuestro ordenamiento constitucional, siendo vehículo para garantizar la libertad de los ciudadanos en un sistema democrático como el nuestro". *Alvarado Pacheco y otros v. ELA,* 188 DPR 594, 628 (2013) (Voto Particular de

Conformidad Pabón Charneco, J. refiriéndose a *AAR, Ex parte, supra*).

En esencia, la Doctrina de Separación de Poderes aspira a establecer las responsabilidades y enmarcar el ámbito de acción de las ramas constitucionales de gobierno. *AAR, Ex parte, supra,* pág. 851. No obstante, el modelo de división de poderes en tres (3) ramas no pretende delimitar de forma absoluta e inflexible el ámbito de poder que le corresponde a cada una de estas. *Íd.,* en la pág. 852. Véase, además, *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 89 (1998). *A contrario sensu*, procura funcionar como un sistema de pesos y contrapesos mediante el cual las tres (3) ramas ostentan algún grado de poder compartido que al mismo tiempo opera como freno para evitar una acumulación desmedida de poder en una sola rama. *ARR, Ex parte, supra,* págs. 852-853. Véanse, además, *Colón Cortés v. Pesquera,* 150 DPR 724, 752 (2000) y *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 427-428 (1982). De esa manera se evita que se abran las compuertas para que una de estas asuma demasiado poder como para dominar a las demás.

Así pues, inspirada por este modelo de gobierno apadrinado por los estados de la Nación,[11] nuestra Carta Magna dispone que el Poder Judicial se ejercerá por este Tribunal Supremo. Const. PR. Art. V, Secs. 1 y 2, LPRA,

---

[11] Véase, J.J. Álvarez González, *Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos*, Bogotá, Ed. Temis, 2010, pág. 237.

Tomo 1. Véase, además, *In re Aprob. Rs. y Com. Esp. Ind.,* 184 DPR 575 (2012). Esto implica que la función judicial solamente puede ejercerse por esta Rama y aquellas funciones no judiciales corresponden a los restantes dos (2) poderes constitucionales. *Colón Cortés v. Pesquera, supra*, pág. 752.

Como corolario de este principio, desde hace más de un siglo este Tribunal ha reclamado enérgicamente su facultad inherente para reglamentar y custodiar los linderos de la profesión legal. Ello debido, primordialmente, a la función inminentemente social que realizan los ciudadanos que escogen ejercer la abogacía en Puerto Rico.[12] Como bien ha señalado esta Curia, la "misión [de los abogados] en la sociedad es altamente noble, pues están llamados a auxiliar a la recta administración de la justicia. En ellos confían, no sólo las partes interesadas sino las cortes mismas". *In Re Díaz*, 16 DPR 82, 92 (1910).[13]

Como se puede apreciar, desde tiempo inmemorable este Tribunal ya había reconocido que la profesión legal estaba **inexorablemente enlazada a la función judicial.** Por consiguiente, los ciudadanos que escogen ejercer esta profesión también lo están debido a que al momento de

---

[12] Véase, E. Arroyo, *Facultad de la Rama Judicial para Reglamentar la Profesión Legal*, 20 Rev. Jur. U.P.R. 38 (1950).

[13] Véase, además, *Martínez Rivera v. Sears, Roebuck*, 98 DPR 641, 652 (1970) ("*[s]u misión como tal no se limita meramente a representar intereses privados […] sino a ser un instrumento leal y eficaz de la administración de la justicia y del orden en nuestra sociedad.*").

prestar su juramento se convierten en funcionarios del Tribunal.[14] En cuanto a este particular es importante revivir por su invaluable pertinencia las siguientes expresiones:

> **[l]a facultad de admisión de aspirantes al ejercicio de la abogacía, es más de poder judicial que de ningún otro poder. Indudablemente, si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia,** si ellos cooperan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos se encuentran, por virtud de las disposiciones de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a los que pretenden ser sus auxiliares y cooperadores en la más alta misión que puede encomendarse a un hombre o a un conjunto de hombres. (Énfasis nuestro). *Ex parte Boneta*, 39 DPR 154, 165 (1929).

Luego de aprobada nuestra *lex superior* en el 1952, podemos afirmar que el reconocimiento por este Tribunal de los letrados como una extensión vital de la Rama Judicial en la administración de la justicia sigue gozando de la misma eficacia. Como hemos señalado, la Constitución de Puerto Rico le confiere a este Tribunal la facultad para administrar el sistema de justicia. Por consiguiente, si los letrados son funcionarios del Tribunal y, por ende,

---

[14] Véase, Cánon 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Véanse, además, *In re Díaz Nieves*, 189 DPR 1000, 1020 (2013); *In re Cuyar Fernández*, 163 DPR 113, 117 (2004), citando a *In re Santiago Rodríguez*, 160 DPR 245, 254 (2003); *Pueblo v. Susoni*, 81 DPR 124 (1959); *In re Bosch*, 65 DPR 248 (1945); *Boneta Ex Parte*, 39 DPR 184 (1929); *In re Díaz*, 16 DPR 82 (1910). Para una discusión sobre este asunto véase también, *Ramos Acevedo v. Tribunal Superior*, 133 DPR 599 (1993).

copartícipes del Tribunal en el ejercicio del Poder Judicial, le corresponde a este Foro velar por que estos posean y mantengan las cualidades necesarias para llevar a cabo tan importante función. De igual manera, le corresponde a este Tribunal, en el sano ejercicio de su discreción, establecer los requisitos que estos deben cumplir para ser merecedores de ingresar al Foro.

El entendido básico de que la reglamentación y supervisión de sus funcionarios recae sobre la Rama Judicial se remonta a la época de la colonización española. Véase, G. Figueroa Prieto, *Propuesta para la Reglamentación de la Conducta Profesional en Puerto Rico*, 81 Rev. Jur. UPR 1, 3 (2012). Naturalmente, y como resultado de esa situación colonial, distintos estatutos españoles relacionados al campo de la abogacía se extendieron a los letrados en Puerto Rico. *Íd*. Una de estas piezas legislativas fue la Novísima Recopilación de 1805, mediante la cual se les exigió a los abogados de Puerto Rico matricularse en los tribunales, adoptándose con ello el modelo judicial para la reglamentación de la abogacía. *Íd*. Ese modelo presupone que por ser los abogados funcionarios del tribunal, estos deben estar reglamentados por la Rama Judicial. *Íd*. Esta prerrogativa le corresponde exclusivamente al Tribunal de mayor jerarquía en la jurisdicción de la cual se trate. *Íd*., en la pág. 5.

Siguiendo esta línea de pensamiento, desde sus inicios este Tribunal acudió a su Poder Inherente como fundamento para resolver asuntos disciplinarios. En *In Re Abella*, 14 DPR 748 (1908), expresamos lo siguiente:

> [P]ara ser cualquier persona admitida al ejercicio de la profesión de abogado ante el Tribunal Supremo y demás tribunales de Puerto Rico, entre otras condiciones es indispensable que sea de buen carácter moral, de modo que **si esta condición llegara a faltar, faltaría una de las bases sobre que descansa la admisión al ejercicio de la profesión de abogado, y esta Corte Suprema que acordó tal prerrogativa tendría indudablemente la facultad de retirarla.** (Énfasis nuestro).

Vemos entonces que desde muy temprano esta Curia entendió que su Poder Inherente para reglamentar la profesión legal era uno amplio. De modo que, si ostentaba el poder para establecer los requisitos para admitir abogados al ejercicio de la abogacía, naturalmente gozaba de igual poder para disciplinarlos y desaforarlos cuando estos dejaban de poseer las cualidades que les hicieron merecedores de entrar al Foro.[15]

Ya para mediados del Siglo XIX el Tribunal Supremo de Estados Unidos había incorporado por fíat judicial la doctrina de Poder Inherente como fundamento para investirse como el ente encargado de reglamentar la práctica de la abogacía. Véase, G. Figueroa Prieto, *supra*,

---

[15] Véanse, además, *In re González Blanes*, 65 DPR 381, 390 (1945) (*"este Tribunal […] tiene facultad inherente para determinar quiénes pueden ejercer como abogado en las cortes insulares, facultad que conlleva la de eliminar del Registro de Abogados aquellos que por sus actuaciones se hagan indignos de ejercer la profesión"*); *In re Bosch, supra*; *In re Arroyo Rivera*, 63 DPR 796, 798 (1944); *Guerrero v. Tribunal de Apelación*, 60 DPR 241 (1942) e *In re Tormes*, 30 DPR 267 (1922).

pág. 6. Véase, además, *Ex parte Secombe*, 60 U.S. 9 (1856).[16] Sin duda, la relación política entre Puerto Rico y Estados Unidos llevó a que para principios del Siglo XX este Tribunal incorporara formalmente a su acervo jurídico la doctrina de Poder Inherente anunciada años antes en la jurisprudencia de la Nación. Véase, G. Figueroa Prieto, *supra*, pág. 6. Como hemos visto, históricamente este Tribunal siempre se ha caracterizado por seguir un modelo judicial *vis à vis* un modelo legislativo para la reglamentación de la abogacía. *Íd.* en la pág. 17. Vimos, además, cómo el desarrollo de esta facultad ha sido influenciada por las relaciones políticas que ha tenido Puerto Rico tanto con España como con Estados Unidos.

Ese cardinal llamado que cimienta la facultad inherente de este Tribunal para reglamentar la profesión legal ha resonado por décadas en el razonamiento de este Foro. Según comenta el Profesor Guillermo Figueroa Prieto en su Artículo:

> **[D]icha doctrina se ha justificado como consecuencia de la separación de poderes. Expone tal doctrina que corresponde al Poder Judicial reglamentar la abogacía comenzando con la admisión de abogados a la práctica del derecho y concluyendo con la disciplina y separación de abogados.** Así, bajo la doctrina del poder inherente los tribunales han reclamado autoridad para adoptar códigos o reglas de conducta profesional, para admitir abogados a la práctica, para disciplinar y desaforar abogados, para

---

[16] Para un estudio histórico sobre los orígenes de la facultad inherente de los tribunales para reglamentar la profesión legal en el derecho anglo-americano, véanse, E. Arroyo, *supra,* y *Guerrero v. Tribunal de Apelaciones de Contribuciones*, *supra.*

> definir lo que constituye práctica de la abogacía, para ordenar que la colegiación de abogados sea compulsoria, para imponer cuotas a los abogados admitidos, para reglamentar el comportamiento de jueces y para aprobar códigos o reglas de conducta judicial. G. Figueroa Prieto, *supra*, págs. 6-7.

A poco de examinar los tomos de Decisiones de Puerto Rico podemos constatar cómo consistentemente hemos reclamado que somos el ente que ostenta la facultad inherente para reglamentar la profesión legal en nuestra jurisdicción. Véanse, *In re Doitteau Cruz*, 2014 TSPR 65, 190 DPR ___; *In re Martínez Maldonado*, 185 DPR 1085, 1087 (2012); *In re Reichard Hernández*, 180 DPR 604 (2011); *In re Morell Corrada*, 171 DPR 327, 330 (2007); *In re González Díaz*, 163 DPR 648 (2005); *In Re Benítez Echevarría*, 128 DPR 176, 176-177 (1991) e *In Re Ángel Delgado*, 120 DPR 518, 527 (1988).

De igual forma, hemos reiterado en innumerables ocasiones que la remoción, al igual que la admisión al ejercicio de la abogacía, es una función inherente de la Rama Judicial que corresponde única y exclusivamente a este Foro como Tribunal de mayor jerarquía en nuestra jurisdicción. Véanse, *In re Carrasquillo Ortiz*, 163 DPR 589, 592 (2004); *In re Peña Peña*, 153 DPR 642, 649 (2001); *Metrop. de Préstamos v. López de Victoria*, 141 DPR 844 (1996); *In re Liceaga*, 82 DPR 252, 255 (1961).[17]

---

[17] Véanse, además, *In re Andréu Ribas*, 81 DPR 90, 121 (1959); *In re Pagán*, 71 DPR 761, 763 (1950); *In re Abella*, *supra*, pág. 238; *In re González Blanes*, *supra*, págs. 390-391; *In re Bosch*, *supra*, pág. 251; *In re Arroyo Rivera*, 63 DPR 796, 798 (1944); *Guerrero v. Tribunal de Apelación*, *supra*, págs. 247-252; *Ex parte Jiménez*, 55 DPR 54 (1939); *In re Tormes*, 30 DPR 267, 268 (1922) y *Coll v. Leake*, 17 DPR 857 (1911).

No obstante, en pleno conocimiento de los límites de nuestro poder, y respetando los poderes que nuestra Constitución le ha conferido a la Rama Legislativa,[18] este Tribunal ha reconocido la facultad de la Asamblea Legislativa para legislar asuntos que incidan en este campo.[19] **Empero, hemos enfatizado que toda legislación dirigida a reglamentar de cualquier modo la profesión legal es puramente directiva y no mandatoria.** Véanse, *In re Fund. Fac. Der. E. Ma. de Hostos II*, 150 DPR 508, 512 (2000) (Resolución); *López Santiago, Ex parte*, 147 DPR 909, 912 (1999); *Colegio de Abogados de P.R. v. Schneider*, 112 DPR 540, 546 (1982); *In re Liceaga*, 82 DPR 252, 255 (1961); *In re Pagán*, 71 DPR 761, 763 (1950); *In re González Blanes*, 65 DPR 381, 391 (1945); *In re Bosch,* 65 DPR 248, 251 (1945); *Ex parte Jiménez*, 55 DPR 54 (1939); *In re Abella*, *supra*, pág. 239.

Además, y particularmente pertinente a la controversia ante nuestra consideración, hemos expresado inequívocamente que:

> [l]a preeminencia de la acción judicial en este campo, **el cual incluye naturalmente la facultad de pasar juicio sobre si debe unificarse o no el foro en una jurisdicción y bajo qué**

---

[18] Por mandato Constitucional es la Asamblea Legislativa quien ostenta la facultad para aprobar leyes. Const. PR, Art. III, Sec. 17, LPRA, Tomo 1.

[19] Véanse, por ejemplo, *In re Maldonado*, 185 DPR 1085 (2012); *In re Franco*, 173 DPR 688 (2008); *In re González Carrasquillo*, 164 DPR 813, 832 (2005); *Ex parte López Santiago*, 147 DPR 909, 911 (1999) y *Pueblo v. Santaella*, 91 DPR 350, 355-56 (1964).

**condiciones,** no significa que la legislación sobre estos particulares que **no conflija** con las pautas que este Tribunal establezca sea nula. *Colegio de Abogados de P.R. v. Schneider, supra,* pág. 546.

Así pues, de la misma manera en la que hemos reconocido la validez de estatutos aprobados para auxiliarnos en el ejercicio de nuestro Poder Inherente, hemos invalidado con igual firmeza legislación que tiene el efecto de privar o menoscabar dicho poder. Véase, por ejemplo, *In re Dubón Otero*, 153 DPR 829, 859 (2001) (Voto Particular de Conformidad, Rebollo López, J., refiriéndose a *In Re González Blanes*, 65 DPR 381, 391 (1945)).

En cuanto a este particular, Figueroa Prieto especifica que esta Curia

> se hizo eco de la doctrina estadounidense que sostiene que aunque reconoce que el poder sobre la práctica de la abogacía pertenece a la Rama Judicial, incluyendo el poder para admitir y disciplinar abogados, **el Poder Legislativo puede legislar de manera complementaria sobre la abogacía.** De esa forma, **el Tribunal Supremo se reservará la potestad de decidir cuál legislación acepta como complementaria a su poder de reglamentación y cuál legislación rechaza por considerarla usurpadora de su facultad para reglamentar la abogacía.** (Énfasis nuestro) G. Figueroa Prieto, pág. 6.

De esta manera se logra un balance adecuado respetando el poder para legislar que compete exclusivamente a la Rama Legislativa sin subvertir el Poder Inherente para reglamentar la abogacía que, como corolario de la Doctrina de Separación de Poderes, le pertenece a la Rama Judicial. **<u>Todo lo anteriormente</u>**

**discutido ha sido el modelo que ha imperado en nuestra jurisdicción por más de cien (100) años.**

III

Por otro lado, y por considerarlo como un elemento importante al momento de ejercer nuestro Poder Inherente para regular la profesión legal, no podemos disponer de la controversia de autos sin antes discutir las implicaciones de índole constitucional que surgen al obligar a un grupo de profesionales *sui generis* -como lo es la clase togada- a asociarse a una entidad particular para ejercer legítimamente su profesión. **Ello teniendo presente que, independientemente de los argumentos constitucionales presentes en este caso, la integración del foro es un asunto que se enmarca dentro del ejercicio de nuestro Poder Inherente para regular la profesión legal.**

En esta coyuntura, declaramos que nuestro análisis en este acápite se limitará a discutir el derecho a la libertad de asociación según quedó consagrado *específicamente* en la Constitución de Puerto Rico. Es decir, nuestra decisión constituye un "fundamento estatal adecuado e independiente" para disponer del caso de autos. Véanse *Michigan v. Long*, 463 US 1032 (1983) y A. García Padilla & J.J Álvarez González, *El Tribunal Supremo de Puerto Rico: La Corte Pons*, 59 Rev. Jur. UPR 185, 192 n. 22 (1990).[20]

---

[20] Estamos conscientes de que existe jurisprudencia federal que ha atendido el asunto de la constitucionalidad de la colegiación obligatoria al amparo del derecho de asociación y el derecho a la

A.

Por ser nuestra Carta Magna un documento relativamente reciente, durante el proceso de la Convención Constituyente esta se nutrió de documentos constitucionales que la precedieron y de las ideas liberales-democráticas que imperaban en distintas comunidades políticas al momento de su redacción.[21] Un ejemplo de ello es el derecho a la libertad de asociación que, contrario a la Constitución de Estados Unidos, **se reconoce explícitamente en la Carta de Derechos de nuestra Constitución.** Esta dispone en su Sección 6 que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Const. PR, Art. II Sec. 6, LPRA, Tomo 1.

Realizar un análisis constitucional concienzudo es un ejercicio holístico que conlleva analizar aquellos factores que inspiraron a los constituyentes en la redacción de las distintas cláusulas contenidas en nuestra Constitución. No es suficiente mirar ese texto en el vacío. Por ello, a continuación examinaremos brevemente el historial y los variados factores que inspiraron a los

---

libertad de expresión reconocido en la Constitución Federal. Véanse, por ejemplo, *Keller v. State Bar of Cal.,* 496 U.S. 1 (1990) y *Lathtop v. Donohue*, 367 U.S. 820 (1961). No obstante, como ya hemos mencionado, en los casos de autos nos hemos limitado a analizar el derecho a la libertad de asociación según quedó consagrado específicamente en la Constitución de Puerto Rico, por lo cual esa jurisprudencia no resulta vinculante. Además, debemos recordar que las Constituciones estatales pueden extender el ámbito de protección de los derechos constitucionales más allá del mínimo reconocido en la Constitución Federal.

[21] Véase, J.J. Álvarez González, *supra*, pág. 8.

constituyentes a incluir esta disposición constitucional en nuestra Carta Magna.

B.

A poco de examinar el proceso de redacción de nuestra Constitución podemos constatar la preeminencia que los constituyentes le quisieron impartir al derecho a la libertad de asociación en nuestro ordenamiento constitucional. Por entender que la garantía de ese derecho era un principio fundamental de la libertad humana, y por lo tanto inherente a la democracia,[22] la Escuela de Administración Pública recomendó hacerlo constar explícitamente en nuestro documento Constitucional: "[l]a Constitución de Puerto Rico debe hacer explícita esta garantía de libertad de asociación […] y que, independientemente, es uno de los aspectos más importantes de la democracia".[23]

Por otro lado, se reconoció este derecho en un plano distinto a aquel consagrado en la Constitución de Estados

---

[22] Véase, Escuela de Administración Pública de la Universidad de Puerto Rico, *La Nueva Constitución de Puerto Rico,* págs. 224-225 (1954):

> [e]l derecho de toda persona a unirse a otras para la promoción de propósitos comunes es un complemento necesario de la libertad individual. Bien poco significarían las libertades de conciencia, expresión y acción, si los individuos no pudiesen asociarse para hacer posible su disfrute. La libertad, entendida como la capacidad de cada cual para vivir aisladamente sin restricciones ni relaciones, es, sencillamente, una imposibilidad. La expresión libre de la personalidad humana presupone la cooperación organizada con los semejantes. Al mismo tiempo, la asociación permite la consecución de otros valores sociales y la integración de la solidaridad social. Sin respeto a esta libertad es inconcebible la democracia.

[23] *Íd.*

Unidos. Las expresiones del delegado Jaime Benítez al presentar el Informe de la Comisión de la Carta de Derechos a la Convención claramente evidencian lo anterior. A esos efectos, el delegado expresó que el derecho de asociación propuesto "pasa[ba] a incorporar un nuevo aspecto del derecho y de la libertad, y que no aparece tradicionalmente en las constituciones clásicas, el que se refiere al derecho de libre asociación y libre organización".[24] De lo anterior podemos colegir que **la intención de los Constituyentes fue reconocer una especie de derecho distinto a aquel reconocido bajo la Constitución de Estados Unidos.**

Además, no podemos abstraer de nuestro análisis el hecho de que la Declaración Universal de Derechos Humanos de las Naciones Unidas fue eje de inspiración en la redacción de nuestra Carta de Derechos.[25] Con relación al derecho de asociación, ese documento dispone que "[t]oda persona tiene derecho a la libertad de reunión y de asociación pacíficas" y **"[n]adie podrá ser obligado a pertenecer a una asociación".**[26] Vemos entonces que al reconocer la vertiente negativa de este derecho tan fundamental, este se concibió en su aspecto más amplio.

---

[24] Diario de Sesiones de la Convención Constituyente de Puerto Rico 2565, pág. 1104 (2003).

[25] Véase, J.J. Álvarez González, *supra*, pág. 11 (*"Aunque la influencia de la Constitución Federal es patente, en la Constitución de Puerto Rico se evidencia una importante influencia de la Declaración Universal de Derechos Humanos, proclamada por las Naciones Unidas"*).

[26] Artículo 20 de la Declaración Universal de Derechos Humanos.

Esta fuente que inspiró la redacción de nuestra Carta Magna nos lleva a concluir que nuestros constituyentes, que como vimos quisieron impartirle mayor amplitud a este derecho que aquel reconocido en la esfera federal, tenían claro que el derecho a la libre asociación necesariamente presupone el derecho de las personas a no asociarse. Véase, *Colegio de Abogados de P.R. v. Schneider*, *supra*, pág. 549.

                                C.

Han sido escasas las ocasiones en las cuales ante este Foro se han presentado controversias enmarcadas exclusivamente dentro del derecho a la libre asociación.[27] No obstante, en *Colegio de Abogados de P.R. v. Schneider, supra,* este Tribunal tuvo ante sí una controversia de esta naturaleza. En aquella ocasión este Foro resolvió que la Asamblea Legislativa podía válidamente legislar para exigirles a los abogados a pertenecer a una agrupación particular como requisito para ejercer su profesión. **<u>Además, reiteramos que el poder para regular la profesión legal es uno inherente de esta Curia.</u>** No obstante, aclaramos que si bien la Asamblea Legislativa puede aprobar legislación en este campo, ello no va por encima del principio constitucional que establece que el Poder Judicial se ejercerá por este Tribunal Supremo. Como consecuencia, recaerá exclusivamente sobre este Foro la

---

[27] J.J. Álvarez González, *supra*, págs. 1114-1124.

facultad de aceptar tal legislación como complementaria a nuestro Poder Inherente, o rechazarla de plano.

En *Col. de Abogados de P.R. v. Schneider, supra*, este Tribunal, por voz del entonces Juez Presidente señor Trías Monge, se aferró a lo anterior para avalar el sistema de colegiación obligatoria establecido mediante la Ley Núm. 43, *supra*. No obstante, claudicó ante la oportunidad histórica de atender adecuadamente el planteamiento constitucional vertido por los recurridos. Mediante un análisis somero, el Juez Presidente señor Trías Monge, en un leve intento de atender el argumento de derecho de asociación levantado por los letrados que cuestionaron la validez constitucional de la colegiación obligatoria, expresó lo siguiente:

> Los intereses públicos en la creación de una sociedad vigorosamente pluralista, en el mejoramiento de la abogacía y en la buena marcha del sistema judicial pesan decididamente más que las inconveniencias personales que pueda acarrear en ciertos casos la colegiación obligatoria. El derecho a la no asociación, derivable del derecho contrario consagrado en la Constitución del Estado Libre Asociado, Art. II, Sec. 6, cede ante los intereses señalados, de naturaleza claramente imperiosa bajo la constitución puertorriqueña. *Colegio de Abogados de P.R. v. Schneider*, *supra*, pág. 549.[28]

Pasando por alto lo problemático que resulta que este Tribunal se haya referido a un reclamo de derechos civiles

---

[28] Como fundamento adicional el Tribunal expresó lo siguiente: "[n]o se nos ha citado, ni hemos hallado en nuestra investigación independiente, decisión alguna que invalide el concepto de colegiación compulsoria. Por el contrario, abundan los casos en Estados Unidos en que se rechaza la contención efectuada aquí de que no puede obligarse a un abogado a pertenecer a una asociación profesional cuyos fines no apruebe". *Colegio de Abogados de P.R. v. Schneider*, *supra*, pág. 549.

como una mera "inconveniencia personal", es menester mencionar que en *Col. de Abogados de P.R. v. Schneider, supra,* este Tribunal falló en articular un estándar específico para analizar controversias de derecho de asociación.

Debido a esa omisión, en *Col. de Abogados de P.R. v. E.L.A., supra,* establecimos por primera vez que una "limitación significativa de la libertad a no asociarse es constitucional solamente si el Estado demuestra un interés gubernamental apremiante que la hace necesaria". Es decir, cuando con su proceder el Estado menoscaba un derecho fundamental este tiene que articular la existencia de un interés apremiante que justifique la necesidad de su actuación.[29] Además, tal como hemos reconocido con otros derechos fundamentales, será necesario que el Estado demuestre que no tenía a su alcance medidas menos onerosas que la legislada para lograr el interés articulado.[30] Solo de esa manera se protege adecuadamente un derecho tan fundamental como el de la libertad de asociación. Además, y conforme al historial que hemos discutido, respetamos la preeminencia que los constituyentes quisieron impartirle a

---

[29] J.J. Álvarez González, *supra*, pág. 816.

[30] Véanse, por ejemplo, *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 733 (1980) (discrimen por sexo); *Arroyo v. Rattan Specialties, Inc.,* 117 DPR 35, 63 (1986) (derecho de intimidad); *De Paz Lisk v. Aponte Roque,* 124 DPR 472, 489 (1989) (discrimen por extranjería); *Pérez, Román v. Proc. Esp. Rel. de Fam.,* 148 DPR 201, 214 (1999) (discrimen por condición social) y *U.P.R. v. Laborde Torres y otros I,* 180 DPR 253, 289 (2010) (libertad de expresión).

este derecho al reconocerlo explícitamente en nuestro documento constitucional.

### D.

En el contexto de la Ley Núm. 109-2014, la propia Asamblea Legislativa reconoció que toda legislación que menoscabe la libertad de asociación en este asunto está supeditada a un escrutinio estricto por este Tribunal. No hay más que revisar la Exposición de Motivos de la Ley para constatar lo anterior. En esta el Estado articuló tener un interés apremiante para legislar en este campo y a esos efectos expuso lo siguiente:

> [E]ntendemos que existe un interés apremiante que tiene que ser protegido por esta Asamblea Legislativa el cual consiste en que todas las personas que practiquen la profesión legal en el Estado Libre Asociado de Puerto Rico pertenezcan a un colegio integrado de abogados y abogadas que represente una garantía para la ciudadanía de tener acceso a una representación legal digna, capacitada, íntegra y diligente. Exposición de Motivos de la Ley Núm. 109-2014, pág. 3.

Sin embargo, escribir una oración y añadirle la palabra "apremiante" es sencillo, pero insuficiente para sobrevivir un estándar de escrutinio estricto. **Lamentablemente, el interés apremiante articulado por el Estado en este caso peca de lo anterior.** Cuando vamos a la médula del interés estatal articulado en este caso para justificar la necesidad de la colegiación obligatoria de los abogados podemos constatar sin ambages que **se trata de expresiones legislativas abstractas y especulativas.** Además, conforman una falacia imperecedera, típica de los argumentos circulares. Esto, ya que lo que se propone

lograr con la legislación a su vez se ofrece como el interés apremiante del Estado.

Sin embargo, nuestro análisis no termina aquí. Según hemos mencionado, el estándar adecuado para analizar controversias que involucren el derecho fundamental a la libre asociación no solo exige que la acción estatal persiga un interés apremiante, sino que además el Estado demuestre que no existen medidas menos onerosas para proteger ese interés. Aún si se estipulara en este caso que el Estado persigue un interés apremiante con la colegiación obligatoria, este falló en cumplir con la segunda parte del escrutinio antes discutido.

Ello se debe a que tras examinar detenidamente el historial legislativo de la Ley Núm. 109-2014 no hallamos expresión alguna por parte de la Asamblea Legislativa dirigida a tan siquiera explorar la existencia de medidas menos onerosas para lograr el interés articulado. De hecho, en su alegato el Estado acude -al igual que la Asamblea Legislativa- a un argumento patentemente circular y a esos efectos expresa que:

> [A] poco que se profundice en el asunto, este Honorable Tribunal constatará que ni siquiera existen medidas alternas para lograr el fin que promueve la ley, pues no hay otra manera de lograr la unificación e integración absoluta del foro. La colegiación compulsoria es el único mecanismo que viabiliza dicho cometido, con todas las ventajas que ello supone para la profesión legal y para la ciudadanía en general. *Alegato del Estado Libre Asociado de Puerto Rico en solicitud de desestimación de las demandas consolidadas de epígrafe*, pág. 29.

Esta aseveración es totalmente ilógica. Sería un absurdo jurídico avalar que el interés apremiante articulado por el Estado sea a su vez la medida menos onerosa para lograr el fin que persigue. Es decir, lo que propone el Estado es que el fin es a su vez el medio. Ello constituye un evidente *non sequitur.*

Sin duda, y conforme a todo lo anteriormente discutido, la Ley Núm. 109-2014 afecta sustancialmente el derecho de asociación de los abogados en Puerto Rico y el Estado no cumplió con el estándar aplicable para menoscabar ese derecho.

IV

A.

Con todo lo anteriormente discutido en mente, debemos decidir entonces si la Ley Núm. 109-2014 es válida a la luz de nuestro Poder Inherente para reglamentar la profesión legal. Para ello, debemos determinar si aceptamos esa legislación como un esfuerzo complementario a nuestro Poder Inherente o si, *a contrario sensu*, la Ley menoscaba fatalmente esa facultad.

Como hemos discutido, y a manera de repaso, desde sus inicios este Tribunal ha reiterado ostentar el Poder Inherente para reglamentar la profesión en sus distintos aspectos. Por décadas esa facultad ha representado un principio incuestionable que se encuentra firmemente asentado en el acervo jurisprudencial de este Foro.

Por otro lado, vimos cómo ese poder proviene y se nutre de la naturaleza misma del sistema de Separación de Poderes que en su misión de delinear "esas fronteras invisibles pero poderosas"[31] dispone que será el Poder Judicial el ente encargado de administrar el sistema judicial en Puerto Rico. Como consecuencia de este mandato constitucional, este Foro ha reclamado ostentar el Poder Inherente para reglamentar la profesión legal y, por consiguiente, a los abogados por ser estos funcionarios del Tribunal.

Finalmente, vimos cómo en nuestra jurisdicción impera un modelo judicial de reglamentación, lo que implica que la facultad para reglamentar la profesión legal recae exclusivamente en este Tribunal Supremo. De modo que cualquier ley aprobada para legislar en este campo es puramente directiva y no mandatoria para este Tribunal. Con todo lo anteriormente discutido presente, pasamos a resolver.

B.

*In limine*, es importante destacar que los abogados son un grupo de profesionales *sui generis* que, **contrario a otros grupos profesionales**, están fiscalizados por un ente permanente que los regula de manera independiente a cualquier grupo profesional o colegio. En el caso de la profesión legal es este Tribunal el ente regulador que por mandato constitucional ostenta el poder para reglamentar

---

[31] *AAR, Ex parte, supra.*

la profesión legal. Es decir, todo abogado tiene que ser autorizado por este Tribunal para practicar la abogacía, y siempre deberá estar autorizado mientras esté activo como abogado. Mientras se mantengan ejerciendo la profesión, este Tribunal tendrá jurisdicción para disciplinarlos y exigirles que cumplan con los requisitos que entendamos sean necesarios para mantener la calidad de los servicios legales en Puerto Rico. Por eso, y como abundaremos a continuación, consideramos que no es necesario que los abogados en Puerto Rico estén obligados a pertenecer a otra entidad cuando ya están bajo la supervisión de este Foro.

Respetamos la voluntad legislativa de promulgar la Ley Núm. 109-2014 para, entre otras cosas, establecer la colegiación obligatoria como un requisito adicional para que los letrados en Puerto Rico ejerzan legítimamente su profesión. No obstante, conforme hemos discutido, para evitar una intromisión indebida con nuestro Poder Inherente, cualquier pieza legislativa dirigida a reglamentar de cualquier modo la profesión legal en nuestra jurisdicción es puramente directiva y no mandatoria. Este Tribunal es quien ostenta la potestad de decidir qué legislación aceptamos como complementaria a nuestro poder de reglamentación. Debido a ello y por todos los fundamentos que discutiremos, rechazamos varios Artículos de la Ley Núm. 109-2014 por considerarlos

incompatibles con nuestra facultad para reglamentar la abogacía.

C.

Al comienzo de su Alegato el Estado arguye que "[c]iertamente nada ha cambiado desde *Colegio de Abogados de P.R. v. Schneider, supra*, que requiera una variación en la norma establecida en dicho caso por esta Alta Curia".[32] Lo equivocado de esta aseveración es evidente. Presumimos que el Estado sabe -o debería saber- que luego de la decisión que este Tribunal emitió en *Schneider* **sí** hubo un cambio significativo en la profesión legal. Y es que **por casi cinco (5) años la profesión legal ha funcionado eficientemente bajo un sistema de colegiación voluntaria y no ha ocurrido disloque alguno en el funcionamiento de la Rama Judicial y de la profesión legal como resultado de esa nueva realidad.** Ello se debe a que durante ese periodo -y previo al mismo- este Tribunal no claudicó a su deber de regular vigorosamente la profesión legal y continuó velando celosamente por que la Rama Judicial funcionara de manera eficiente.

A pesar de que durante este periodo el Colegio de Abogados experimentó una merma significativa en su matrícula, el sistema de justicia no se ha quebrantado en Puerto Rico. Los tribunales en la jurisdicción siguen funcionando como de costumbre, de manera que no se ha

---

[32] *Alegato del Estado Libre Asociado de Puerto Rico en solicitud de desestimación de las demandas consolidadas de epígrafe*, pág. 2.

visto afectada ni se ha demostrado una disminución en la calidad de los servicios legales, como tampoco se ha limitado el acceso a la justicia de los ciudadanos.[33] De igual manera, los procedimientos disciplinarios contra aquellos integrantes de la clase togada, encargados de auxiliar a este Foro en la sana administración de la justicia, han continuado con la misma vigorosidad y sentido de responsabilidad que ameritan por parte de este Tribunal.

De hecho, de un estudio llevado a cabo por este Tribunal durante el proceso de investigación para resolver los casos de autos pudimos constatar que nuestras intervenciones para regular la profesión legal en Puerto Rico han sido virtualmente las mismas en los periodos de cinco (5) años antes y después de que se eliminara la colegiación obligatoria en el año 2009. Específicamente, en los términos de 2004 a 2009 este Tribunal intervino en cuatrocientas cuarenta y dos (442) ocasiones para reglamentar algún aspecto de la profesión legal. Mientras que en los términos de 2009 a 2014 se intervino aproximadamente en cuatrocientos cincuenta y un (451) asuntos relacionados a la reglamentación de la abogacía.[34] Es decir, el hecho de que el foro esté integrado no ha

---

[33] Aún en días recientes en donde se ha cuestionado la parcialidad de la Rama Judicial en distintos medios noticiosos del país, hemos sido proactivos implantando medidas para atender efectivamente ese asunto. Véase, por ejemplo, *Enmiendas a las Reglas de Disciplina Judicial*, 2014 TSPR 105, 191 DPR __.

[34] Véanse, G. Figueroa Prieto, *Reglamentación de la Profesión Legal*, 82 Rev. Jur. U.P.R. 519, 552 (2013) y Portal Cibernético de la Rama Judicial, http://www.ramajudicial.pr/opiniones/.

demostrado ser una herramienta necesaria para regular eficientemente la abogacía en Puerto Rico.

Es por eso que no nos convencen los argumentos abstractos de los recurridos sobre cómo la integración del foro mediante la asociación obligatoria al Colegio de Abogados es vital para la sana administración de la justicia en Puerto Rico. Curiosamente, los recurridos no cuestionan de manera contundente el hecho de que la Rama Judicial ha seguido funcionando eficientemente sin que una mayoría de los letrados pertenezcan de manera obligatoria al Colegio de Abogados.

Y es que este Tribunal ya tiene a su alcance una variedad de mecanismos que nos auxilian en nuestra delicada función de reglamentar la profesión legal. Por ejemplo, y sin pretender ser exhaustivos, algunas de las herramientas principales con las que cuenta este Tribunal para esos fines son los Cánones de Ética Profesional y el Programa de Educación Jurídica Continua. Como es conocido, los Cánones de Ética Profesional conforman un cúmulo de normas creadas para desalentar que los abogados incurran en conducta anti ética en detrimento de la profesión legal y la representación digna de aquellos ciudadanos que contratan sus servicios. Por otro lado, el Programa de Educación Jurídica Continua[35] exige que los abogados se

---

[35] El Programa de Educación Jurídica Continua le exige a los letrados cumplir con un total de veinticuatro (24) créditos en cursos académicos en un periodo de dos (2) años. Véase, Regla 6 del Reglamento de Educación Jurídica Continua, 4 LPRA Ap. XVII.

matriculen en una variedad de cursos diseñados para mantenerlos a la vanguardia de los conocimientos necesarios para que estos puedan brindarles a sus clientes una representación digna y adecuada. Tanto el incumplimiento con los Cánones de Ética Profesional como con los requisitos establecidos por el Programa de Educación Jurídica Continua podrían conllevar a que el letrado se enfrente a un procedimiento de desaforo y pierda su licencia. **Además de estas herramientas, no olvidemos que este Tribunal tiene la autoridad para reglamentar en cualquier momento en cuanto a todo asunto que sea necesario para garantizar que los letrados se comporten a la altura de su profesión.**

De hecho, actualmente este Tribunal tiene ante su consideración un Proyecto que propone unos nuevos Cánones de Ética,[36] lo cual demuestra que este Tribunal sigue siendo proactivo en la reglamentación de la profesión. Así pues, concluimos que todos estos mecanismos ayudan a salvaguardar de manera efectiva los mismos valores que los recurridos alegan solo pueden ser garantizados mediante la integración del foro a través de la asociación obligatoria de los letrados al Colegio de Abogados.

Finalmente, además de las razones previamente mencionadas, pesó en nuestro análisis el argumento vertido por los peticionarios en cuanto a su derecho

---

[36] Véase, *In re: Proyectos de Código de Conducta Profesional y de Reglas de Procedimiento para Asuntos Disciplinarios de la Abogacía y la Notaría.* 2013 TSPR 151, 189 DPR __.

constitucional a la libertad de asociación. Por ello, además de por los factores ya discutidos, nos vimos llamados a ejercer nuestro Poder Inherente para evitar un menoscabo sustancial por parte del Estado al derecho constitucional de los peticionarios a no asociarse según lo garantiza la Constitución de Puerto Rico.

Por todas estas razones, consideramos que la colegiación obligatoria no es necesaria en nuestra jurisdicción. La experiencia de los pasados cinco (5) años, así como las herramientas que posee este Tribunal para reglamentar la profesión legal, son suficientes y efectivas para velar por el buen funcionamiento de la justicia en Puerto Rico. Por tal razón, somos del criterio que al imponer la colegiación obligatoria, la Ley Núm. 109-2014 incidió de manera inconstitucional con nuestra facultad inherente para reglamentar la profesión legal. Por ende, a tenor con nuestro Poder Inherente declaramos inconstitucionales los Artículos 5, 6 y 11 de la Ley Núm. 109-2014.

D.

En fin, la decisión que antecede no tiene el efecto de impedir que el Colegio de Abogados siga funcionando como institución ni mucho menos tiene la intención de impedir su existencia. Ciertamente, el Colegio puede seguir fungiendo como entidad para, *inter alia*, defender y ser la voz de aquellos togados que elijan formar parte de esa institución. De igual manera, y no empece que la

colegiación a esta entidad será voluntaria, el Colegio puede seguir "[contribuyendo] al mejoramiento de la administración de la justicia; [a] [formular] informes; [a] [defender] con celo los derechos e inmunidades de los abogados procurando que éstos gocen ante los tribunales de la libertad necesaria para el buen desempeño de su profesión; [a] [promover] relaciones fraternales entre sus miembros, y [a] [velar] por el sostenimiento de una saludable moral profesional entre los colegiados". *Col. de Abogados v. E.L.A., supra*, pág. 203 (Voto Particular Disidente, J. Rodríguez Rodríguez citando a *Colegio de Abogados. v. Schneider [II],* 117 DPR 504, 513-514 (1986)). A su vez, el Colegio continuará ostentando la facultad para expedir fianzas notariales y administrar el Fondo de Fianza Notarial.[37]

De igual modo el Colegio de Abogados puede seguir contribuyendo "a enriquecer la vida intelectual de los abogados y [a] [fortalecer] la aspiración colectiva a una sociedad democrática al amparo de la ley".[38] La única diferencia es que de ahora en adelante este quehacer no será a expensas del poder coercitivo del Estado.

Con la decisión que hoy emitimos no solo defendemos nuestro poder institucional para regular la profesión legal sino que al mismo tiempo, y como resultado del ejercicio afirmativo de ese poder, reivindicamos los

---

[37] Véase, Ley Núm. 5-2013, 4 LPRA Sec. 2142.

[38] *Íd.*

derechos constitucionales de *todas* las partes involucradas en el caso de autos. Es decir, los letrados pueden escoger pertenecer al Colegio, a la Asociación de Abogados, a cualquier otra entidad de su libre elección o a ninguna.

Hoy las corrientes que colocaron a la clase togada a la deriva de la incertidumbre por fin se aplacan. Con un norte claro, es más fácil el camino y sin duda este Tribunal es quien comprende a plenitud la preeminencia que la profesión legal ostenta en nuestra sociedad. Por ello, es nuestra firme contención que este Tribunal es el ente capaz y adecuado para dirigir el camino de la clase togada en Puerto Rico y garantizar el buen funcionamiento de la Rama Judicial. De entender que el esquema de colegiación voluntaria que ha imperado en Puerto Rico por los pasados cinco años ha provocado un disloque en la administración de la justicia, sin duda, este Tribunal así lo hubiese reconocido. Ello porque **regular la profesión legal es mucho más que el ejercicio de un poder, es más bien un deber de la más alta jerarquía. No sería responsable claudicar a ese deber tan importante para ejercer el poder caprichosamente.** En reconocimiento de lo anterior, reafirmamos que no hemos encontrado bases suficientes para avalar la integración del foro en nuestra jurisdicción.

V

Por los fundamentos que anteceden, y en ejercicio de nuestro poder inherente, se declaran inconstitucionales los Artículos 5, 6 y 11 de la Ley Núm. 109-2014. Ello, ya

que al aprobar estos artículos la Asamblea Legislativa violó la Doctrina de Separación de Poderes al establecer requisitos para ejercer la profesión legal en Puerto Rico en contravención del Poder Inherente que ostenta este Tribunal para regular esa profesión.

Además, revocamos aquellas partes de *Colegio de Abogados de Puerto Rico v. Schneider*, *supra*, que sean incompatibles con los pronunciamientos que anteceden.

Se dictará Sentencia de conformidad.


                              Mildred G. Pabón Charneco
                                   Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lcdo. Thomas Rivera Schatz<br><br>    Peticionario<br><br>       v.<br><br>Estado Libre Asociado de Puerto Rico, por conducto del Secretario de Justicia, Hon. César Miranda; Colegio de Abogados de Puerto Rico, por conducto de su Presidenta, Lcda. Ana Irma Rivera Lassen<br><br>    Recurridos | CT-2014-0008 |
| -------------------------- | |
| Asociación de Abogados de Puerto Rico; Héctor R. Ramos Díaz; Rafael Sánchez Hernández<br><br>    Peticionarios<br><br>       v.<br><br>Colegio de Abogados y Abogadas de Puerto Rico; Estado Libre Asociado de Puerto Rico<br><br>    Recurridos<br><br>Carlos Rivera Justiniano, Carlos Pérez Toro, Juan M. Gaud Pacheco, Félix Colón Serrano, María Fullana Hernández, Carmelo Ríos Santiago, Miguel Romero Lugo, Mario Santurio González, Carlos Sagardía Abreu, Luis Dávila Colón, José Meléndez Ortiz, Valerie Rodríguez Erazo y Elías Sánchez Sifonte<br><br>    Interventores | CT-2014-0009<br><br><br><br><br><br>CT-2014-0010 |
| -------------------------- | |

John E. Mudd y John A.
Stewart

    Peticionarios

       v.

Alejandro García Padilla,
Estado Libre Asociado de
Puerto Rico; Colegio de
Abogados de Puerto Rico

    Recurridos

Evelyn Aimée De Jesús
Rodríguez

    Interventora

SENTENCIA

En San Juan, Puerto Rico, a 16 de octubre de 2014.

Por los fundamentos que anteceden, y en ejercicio de nuestro poder inherente, se declaran inconstitucionales los Artículos 5, 6 y 11 de la Ley Núm. 109-2014. Ello, ya que al aprobar estos artículos la Asamblea Legislativa violó la Doctrina de Separación de Poderes al establecer requisitos para ejercer la profesión legal en Puerto Rico en contravención del Poder Inherente que ostenta este Tribunal para regular esa profesión.

Además, revocamos aquellas partes de *Colegio de Abogados de Puerto Rico v. Schneider*, *supra*, que sean incompatibles con los pronunciamientos que anteceden.

Notifíquese <u>inmediatamente</u> por correo electrónico, <u>fax</u> o teléfono y por la vía ordinaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión de Conformidad. El Juez Asociado señor Rivera García emitió una Opinión de Conformidad. La Jueza Presidenta señora Fiol Matta disintió y emitió la expresión siguiente:

> La Jueza Presidenta señora Fiol Matta disiente por entender que la Ley 109-2014 no infringe el poder inherente de este Tribunal para reglamentar el ejercicio de la profesión. Habida cuenta de que en estos casos consolidados se acortaron los términos reglamentarios, se

acoge al término dispuesto en la Regla 5b de nuestro Reglamento, 4 LPRA Ap. XXI-B.

La Juez Asociada señora Rodríguez Rodríguez disintió y emitió la expresión siguiente:

Tomando en consideración la premura improcedente con la que se atendió el caso de referencia, la Juez Asociada Rodríguez Rodríguez disiente y se reserva el derecho a emitir una ponencia al amparo de la Regla 5(b) de nuestro Reglamento, 4 LPRA Ap. XXI-B.

El Juez Asociado señor Estrella Martínez emitió una Opinión Disiente.

La Jueza Asociada Oronoz Rodríguez disintió y emitió la expresión siguiente:

La Jueza Asociada Oronoz Rodríguez disiente de los resuelto en la Opinión mayoritaria por entender que no procedía declarar la inconstitucionalidad de la Ley Núm. 109-2014 y se reserva el derecho a emitir una ponencia al amparo de la Regla 5(b) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lcdo. Thomas Rivera Schatz

Peticionario

v.

Estado Libre Asociado de Pue
Rico, por conducto del Secreta
de Justicia, Hon. César Miran
Colegio de Abogados de Pue
Rico, por conducto de
presidenta, Lcda. Ana Irma Riv
Lassén

Recurridos

_____

Asociación de Abogados de Pue
Rico; Héctor R. Ramos Díaz; Raf
Sánchez Hernández

Peticionarios

v.

Colegio de Abogados y Abogadas
Puerto Rico; Estado Libre Asoci
de Puerto Rico

Recurridos

Carlos Rivera Justiniano, Car
Pérez Toro, Juan M. Gaud Pache
Félix Colón Serrano, María Full
Hernández, Carmelo Ríos Santia
Miguel Romero Lugo, Mario Santu
González, Carlos Sagardía Abr
Luis Dávila Colón, José Melén
Ortiz, Valerie Rodríguez Erazo
Elías Sánchez Sifonte

Interventores

_____

John E. Mudd y John A. Stewar

Peticionarios

CT-2014-0008

CT-2014-0009

CT-2014-0010

v.

Alejandro García Padilla, Est
Libre Asociado de Puerto Ri
Colegio de Abogados de Puerto R

          Recurridos

Evelyn Aimée De Jesús Rodríguez

          Interventora

Opinión de Conformidad emitida por el Juez Asociado señor
MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 16 de octubre de 2014.

A diferencia de la Constitución federal, la Constitución del Estado Libre Asociado de Puerto Rico garantiza expresamente la libertad de asociación como derecho fundamental del individuo frente al Estado. Art. II, Sec. 6, Const. PR, LPRA, Tomo 1. Mediante la ley que nos ocupa, el Estado creó una organización de abogados y pretende obligar a todos los miembros activos de la profesión legal a pertenecer a ese ente. Si la libertad de asociación significa algo más que una retórica hueca entonces hay que concluir que el individuo retiene, como derecho fundamental de rango constitucional, la libertad tanto de asociarse como de escoger no asociarse con otra persona o grupo. "Por supuesto este valor superior no supone una irrestricción absoluta, de forma que no pueda

subordinarse a otros intereses cuando la necesidad y conveniencia públicas lo requieran. Es precisamente esta área la que nos corresponde deslindar en cada caso específico". Mari Bras v. Casañas, 96 DPR 15, 21 (1968).

Aclarado esto, el escrutinio legal aplicable es el que siempre utilizamos cuando la controversia involucra un derecho constitucional fundamental. Es decir, para sostener una asociación compulsoria el Estado tendrá que ofrecer razones de peso, es decir intereses apremiantes, y deberá demostrar que la legislación está diseñada estrechamente para alcanzar esos intereses, o sea que no hay otra manera de lograr los objetivos de la legislación impugnada que no sea la asociación forzada. Véase U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 289 (2010), y los demás casos citados en el escolio 28 de la Opinión del Tribunal. Como concluye el Tribunal en su Opinión, el gobierno no pudo cumplir con el peso legal de probar que la asociación compulsoria de los abogados es indispensable para lograr los objetivos que el legislador enunció.

Según la Constitución de Estados Unidos, la asociación compulsoria se puede establecer sin violar la libertad de asociación de los abogados, siempre que no se obligue a los objetores a costear con sus cuotas las actividades de la asociación que no estén relacionadas con la reglamentación de la profesión o con los servicios legales que se prestan a los habitantes del estado. Keller v. State Bar of California, 496 US 1 (1990).

La situación según la Constitución del Estado Libre Asociado de Puerto Rico es diferente. Como señalamos prístinamente en nuestra Resolución en Col. de Abogados v. E.L.A., 181 DPR 135, 137 (2011), *cert.* denegado Puerto Rico Bar Ass'n v. Commonwealth of Puerto Rico, 132 S.Ct. 1535 (2012), "es la colegiación compulsoria de una clase profesional la que crea una fricción inevitable con la libertad de asociación de los afectados".

En el caso de los abogados, como explica el Tribunal, ese conflicto es mayor debido a que, según el esquema constitucional local, somos nosotros en última instancia, no la Asamblea Legislativa, los encargados de reglamentar la práctica de la profesión legal. Así pues, la intromisión de la Asamblea Legislativa mediante la ley que nos ocupa es una infracción doble, tanto al entendido constitucional de separación de poderes como también a los derechos constitucionales de los abogados. Como se puede apreciar, atendemos esta controversia exclusivamente al amparo de la Constitución del Estado Libre Asociado de Puerto Rico. Es decir, resolvemos por fundamentos locales independientes al derecho constitucional federal de asociación.

En este aspecto, la Carta de Derechos de la Constitución local concede más derechos que su contraparte federal. Después de todo, la Constitución de Puerto Rico se aprobó en 1952, una fecha más reciente que la Constitución de Estados Unidos (que entró en vigor en

1789). La Constitución de Puerto Rico consagra expresamente la libertad de asociación como una garantía fundamental.

La Convención Constituyente quiso "incorporar un nuevo aspecto del derecho y de la libertad, y que no aparece tradicionalmente en las constituciones clásicas, el que se refiere al derecho de libre asociación y libre organización...". Diario de Sesiones de la Convención Constituyente, Orford, NH, Equity Publishing, Tomo 2, pág. 1104 (Informe del delegado Jaime Benítez, Presidente de la Comisión de la Carta de Derechos). Se insistió en hacer expresa la garantía de libertad de asociación por tratarse de "uno de los aspectos más importantes de la democracia". Escuela de Administración Pública de la Universidad de Puerto Rico, La nueva constitución de Puerto Rico, 1954, págs. 224-225.

La Sec. 6 del Art. II de la Carta de Derechos se basa no solo en el acervo histórico de la Constitución de Estados Unidos, sino que incorpora el principio básico del Art. 20 de la Declaración Universal de Derechos Humanos, proclamada por la Organización de Naciones Unidas, de que "[n]adie podrá ser obligado a pertenecer a una asociación". Los estudiosos reconocen la importancia de esta influencia. JJ Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2010, pág. 11.

Establecido este acervo histórico, se necesita mucha fuerza de cara para impugnar esta decisión como una supuesta intromisión del Tribunal. Es todo lo contrario. La Constitución nos encomienda ser sus intérpretes máximos y proteger los derechos de los individuos frente a los designios inconstitucionales del gobierno. Art. V, Sec. 4, Const. PR, LPRA, Tomo 1.

En esta ocasión fue la Asamblea Legislativa la que usurpó inconstitucionalmente las facultades del Tribunal Supremo. Ya denunciamos esa tendencia en Alvarado Pacheco y otros v. E.L.A., 188 DPR 594 (2013), reafirmado por Opinión en AMPR et als. v. Sist. Retiro Maestros IV, Op. de 11 de abril de 2014, 2014 TSPR 58, 2014 JTS 67, 190 DPR ___ (2014). Esta parece ser una tentación legislativa irresistible y de cuño reciente que no podemos convalidar.

Por eso rechazo las amenazas que se emitieron cuando paralizamos interlocutoriamente la vigencia de la Ley Núm. 109-2014. En aquel entonces se habló de limitar la jurisdicción de este Tribunal debido a que acogimos este recurso y a pesar que un intento anterior fue declarado inconstitucional en AMPR et als. v. Sist. Retiro Maestros IV, ibíd. Hoy, como siempre, resolvemos conforme a Derecho. "No por chantajes, presiones o comentarios públicos injustos, insultantes y lamentables por miembros de las otras dos ramas de gobierno que han sido electos para servir como líderes y ser ejemplo para nuestros jóvenes, y que tratan de anticipar e influenciar

indebidamente las determinaciones de los componentes de la Rama Judicial". Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 840 (2013) (Opinión de conformidad del Juez Asociado señor Feliberti Cintrón). ¿Será que es mucho pedir que se respete la Constitución?

Obligar a un profesional a asociarse con quien no quiere no es una condición válida para obtener una licencia y practicar su profesión. El Estado no adelantó una sola razón apremiante que no se pueda lograr sin obligar a los abogados a asociarse con quien no desean. De hecho, la Asamblea Legislativa ni siquiera exploró este aspecto al legislar. El único argumento que el Estado adelanta es la compulsoriedad como fin en sí mismo y no como lo que es: un método para lograr otros intereses. En síntesis, el argumento de la Procuradora General se reduce a que es válido obligar a los abogados a pertenecer a una asociación profesional porque esa es la única manera de obligarlos. El argumento es tan llano que no hay que discutirlo más.

Sin duda, la reglamentación de la práctica de una profesión es un asunto importante. Si bien es cierto que la reglamentación de los abogados como funcionarios del Tribunal está en manos de este Tribunal, eso no invalida cualquier legislación relacionada con este tema. La separación de poderes no significa que las ramas del gobierno operan con independencia absoluta unas de las otras. Hernández Agosto v. López Nieves, 114 DPR 601, 619 (1983). "Por el contrario, la interacción que la Constitución establece entre las funciones

de las ramas de gobierno crea un sistema de pesos y contrapesos con el propósito de generar un equilibrio dinámico entre poderes coordinados y de igual rango, y evitar así que ninguno de éstos amplíe su autoridad a expensas de otro". [escolios omitidos] Misión Ind. P.R. v. J.P., 146 DPR 64, 89 (1998). Véase, además, Nieves Huertas et al. v. ELA I, 189 DPR 611, 619 (2013) (Sentencia).

Al adjudicar tenemos que tener cuidado de no invalidar una legislación más allá de lo que es necesario. Si exigimos que la Asamblea Legislativa no interfiera con las facultades que la Constitución encomendó a este Tribunal, debemos reciprocar y no intervenir impropiamente con las facultades válidas de la Rama Legislativa. Solo así mantenemos el equilibrio diseñado como sostén de nuestro andamiaje constitucional. Por consiguiente, hay que partir de la premisa de que nada impide que la Asamblea Legislativa atienda un asunto mediante legislación siempre que al hacerlo no viole un derecho constitucional ni interfiera con las facultades que la Constitución encomienda a otra rama de gobierno. Por eso no hay nada inconstitucional en que la Asamblea legislativa cree una asociación de abogados voluntaria como ente cuasipúblico. De hecho, solo la Asamblea legislativa puede crear mediante legislación una entidad como el Colegio de Abogados; nosotros carecemos de esa facultad. Ese estatuto no interfiere con la reglamentación de los requisitos para ejercer la abogacía. Por supuesto, la asociación creada por ley estará facultada para aprobar reglamentos internos y decidir bajo cuáles

circunstancias una persona se hará miembro o bajo cuáles dejará de serlo. Nada impide que la Asamblea Legislativa provea para ello.

No nos corresponde interferir con esa facultad legislativa con el pretexto de que somos nosotros quienes deciden qué personas están autorizadas a practicar la abogacía y con cuáles requisitos tienen que cumplir. Si asumiéramos la posición contraria tendríamos que concluir que nos equivocamos al sostener la validez de la ley de 2009 que hizo voluntaria la membresía en el Colegio de Abogados. Col. de Abogados v. E.L.A., supra. Tendríamos que concluir también, siguiendo tan dudoso argumento, que no hay una penalidad efectiva por practicar ilegalmente la abogacía, pues la Asamblea Legislativa habría interferido con nuestras facultades al aprobar la legislación penal que define en qué consiste esa práctica ilegal pero por otro lado, este Tribunal no tiene la autoridad constitucional para crear delitos.

Nada impide que una asociación voluntaria de abogados, sea el Colegio de Abogados, la Asociación de Abogados u otra, proponga a este Tribunal un proyecto de cánones de ética para la profesión legal. De hecho, los cánones más reconocidos en Estados Unidos –adoptados con algunas variantes en múltiples estados de la Unión– son los de la *American Bar Association*, una entidad totalmente voluntaria. Tampoco hace falta la colegiación obligatoria para reglamentar ni mucho menos para ofrecer cursos de educación continua. Ese asunto lo reglamenta este Tribunal y precisamente se encuentra bajo estudio. Como

organización voluntaria, el Colegio de Abogados ha ofrecido estos cursos por años. Por otro lado, no hace falta la compulsoriedad en la membresía para que el Colegio ofrezca servicios legales ni para que investigue y reporte posibles violaciones éticas de sus asociados. Mucho menos hay que obligar a los abogados a pertenecer al Colegio por los beneficios materiales que este pueda ofrecer a su matrícula. Por el contrario, puede argumentarse que la voluntariedad es un incentivo para que una organización que desee prosperar y quiera ser relevante ofrezca servicios y beneficios de calidad a sus asociados. La membresía obligatoria no incentiva esos ofrecimientos; por el contrario, hace innecesarios los alicientes para ofrecerlos.

Para lo que sí es necesaria la colegiación obligatoria es para mantener en posiciones de influencia a unas personas y a una institución sin tener que ganarse la confianza de sus representados; para costear todo lo que la directiva quiera y para hacer creer que la entidad actúa y se expresa a nombre de toda una matrícula sin importar la opinión de los asociados. La solución concebida hasta ahora (el descuento de parte de la cuota que pagan los colegiados) no atiende el problema de fondo. Esa solución parte de la premisa de que no hay daño si se obliga a alguien a asociarse para ciertos fines y que por eso no hay que explorar otras alternativas que no lesionen el derecho fundamental de libre asociación.

El enfoque que trae hoy este Tribunal es distinto. Si el sostén principal de una democracia es la diversidad de ideas,

la pluralidad de intereses y la tolerancia a las opiniones variadas, como bases fundamentales para recabar la lealtad a nuestro sistema de gobierno, entonces obligar a todos a asociarse en contra de su voluntad le resta valor a esos pilares de la vida en sociedad. Por eso, la asociación obligatoria como la concibe la Ley Núm. 109-2014 es la antítesis de la democracia. ¿Es que es mucho pedir que seamos democráticos?

No podemos ser timoratos cuando se trata de proteger los derechos individuales que la Constitución reconoce expresamente. Por eso me parece inescapable concluir, como señaló el Juez Presidente señor Hernández Denton en su Opinión disidente en Col. de Abogados v. E.L.A., supra, que nuestro razonamiento no puede limitarse a los abogados. Los demás profesionales no tienen menos derechos frente al Estado.

En Puerto Rico se proliferó durante todo el Siglo XX obligar a los profesionales y los que ejercen oficios –no solo a los abogados- a asociarse en "colegios", es decir en asociaciones con membresía compulsoria, desde actores y plomeros hasta médicos y enfermeros. Véase la lista completa en la Opinión disidente del Juez Presidente señor Hernández Denton en Col. de Abogados v. E.L.A., supra, págs. 193-194. Cuando se crearon  estas asociaciones en tierras y épocas lejanas no se concebía el derecho administrativo moderno. Sus orígenes se hallan en el antiguo Derecho romano, donde comenzaron como cofradías religiosas y gremiales. Estas asociaciones ofrecían la conveniencia de que los que desearan

practicar un oficio o aprender una disciplina liberal aprendieran de sus homólogos. Por eso se les llama "colegios". Con el pasar del tiempo la colegiación se extendió para abarcar múltiples profesiones y oficios, aunque ya no se aprendan en el taller sino en escuelas especializadas o en las universidades. A su vez, estos gremios adquirieron privilegios concedidos por el Estado y dejaron de ser asociaciones voluntarias. G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 Rev. Jur. UPR 729, 742-745 (1999).

En Puerto Rico, el legislador no entendió o ignoró el mandato de libre asociación que el Pueblo incluyó en la Carta de Derechos y siguió aprobando la creación de colegios profesionales aún después de 1952, con la anuencia de este Tribunal. No más. No estamos ante meras "inconveniencias personales", como lamentablemente este Tribunal caracterizó los reclamos de libre asociación hechos en Col. de Abogados v. Schneider, 112 DPR 540, 549 (1982). La ejecución de la política pública no se puede delegar a un grupo de interés a expensas de las garantías constitucionales que protegen a todos los individuos.

Si lo que se busca al delegar la reglamentación de las profesiones es reducir los costos al fisco, basta con crear unas juntas reglamentadoras compuestas por profesionales (que incluso pueden ser elegidos por ellos mismos) y costearlas con los fondos que se recaudan por el pago de las licencias de la clase afectada. Eso también cumple con el objetivo de que sean

esos mismos profesionales quienes se reglamenten a sí mismos sin crear una estructura costosa y burocrática y, sobre todo, sin obligar a nadie a asociarse con quien no quiere. En otras palabras, sin violar la Constitución.

En este caso no se ha aducido un interés apremiante válido que solamente pueda ser atendido mediante la colegiación compulsoria. Existen métodos para reglamentar la profesión legal y atender los mismos intereses públicos pero sin lesionar la libertad de asociación de los abogados. Hoy invalidamos la asociación obligatoria de los abogados porque eso es lo que se plantea en este caso y es lo que la Constitución de Puerto Rico nos requiere. Por eso no puedo menos que celebrar la derogación del precedente de Col. de Abogados v. Schneider, supra, una página negra en la vasta jurisprudencia de derechos civiles que ha emitido este Tribunal.

Pero debe quedar claro que los principios que sentamos hoy son de aplicación general y tienen que evaluarse también en el contexto de otras profesiones y oficios. Irónicamente, gracias a la insistencia del Colegio de Abogados para que se aprobara esta legislación de membresía obligatoria, los contornos constitucionales en este asunto están más claros hoy y ahora todos los profesionales de Puerto Rico saben cuáles son los linderos de su derecho de libre asociación.


                          RAFAEL L. MARTÍNEZ TORRES
                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lcdo. Thomas Rivera Schatz

Peticionario

v.

Estado Libre Asociado
Puerto Rico, por conducto
Secretario de Justicia, H
César Miranda; Colegio
Abogados de Puerto Rico,
conducto de su Presiden
Lcda. Ana Irma Rivera Lassen

Recurridos

-----------------------------

Asociación de Abogados
Puerto Rico; Héctor R. Ra
Díaz; Rafael Sánchez Hernánd

Peticionarios

v.

Colegio de Abogados y Aboga
de Puerto Rico; Estado Li
Asociado de Puerto Rico

Recurridos                    CT-2014-0009

Carlos Rivera Justinia
Carlos Pérez Toro, Juan
Gaud Pacheco, Félix Co
Serrano, María Full
Hernández, Carmelo R
Santiago, Miguel Romero Lu
Mario Santurio Gonzál
Carlos Sagardía Abreu, L
Dávila Colón, José Melén
Ortiz, Valerie Rodríguez Er
y Elías Sánchez Sifonte

Interventores

John E. Mudd y John A. Stewa

Peticionarios

CT-2014-0008

v.

Alejandro García Padil
Estado Libre Asociado
Puerto Rico; Colegio
Abogados de Puerto Rico

          Recurridos

                                    CT-2014-0010

Evelyn Aimée De Je
Rodríguez

          Interventora

Opinión de Conformidad emitida por el Juez Asociado señor RIVERA GARCÍA

En San Juan, Puerto Rico, a 16 de octubre de 2014.

La determinación que hoy alcanza una mayoría de los miembros de este Tribunal, **no** concierne específicamente al Colegio de Abogados y Abogadas de Puerto Rico. Mucho menos representa una evaluación histórica de cuán bien o mal esta institución ha cumplido los propósitos legislativos para los que se creó. El presente caso atañe más bien a si la Asamblea Legislativa excedió sus facultades constitucionales al establecer el requisito de colegiación como condición necesaria e imprescindible para ejercer la profesión legal en Puerto Rico. Hoy contestamos afirmativamente esa interrogante siguiendo los mismos parámetros que este Tribunal Supremo estableció desde hace más de cien años. Así, respaldados *exclusivamente* en nuestro poder inherente para regular el ejercicio de la

abogacía en nuestra jurisdicción, optamos por no avalar el requisito de colegiación obligatoria establecido por la Asamblea Legislativa mediante la Ley Núm. 109-2014.

Los antecedentes fácticos y el derecho aplicable están expuestos correctamente en la Opinión del Tribunal. Por ello, únicamente emitiré algunas expresiones para explicar el porqué estoy conforme con la resolución que hoy disponemos para los presentes casos de tan alto interés para la profesión jurídica y la comunidad en general.

**I**

Como bien surge de la Opinión mayoritaria, la doctrina de la separación de poderes pretende delimitar el campo de acción de cada una de las ramas de gobierno. Conforme a ese modelo, la Constitución de Puerto Rico expresamente atribuye poderes específicos a cada uno de los tres componentes de nuestro sistema gubernamental.[39] No obstante, en la práctica esta doctrina no supone una separación categórica y absoluta que conlleve una independencia total entre las tres ramas constitucionales. Por el contrario, el establecimiento de poderes específicos propios de cada rama provoca una inevitable interacción de frenos y contrapesos que evita la concentración desmedida

---

[39] De esta manera, la Constitución de Puerto Rico establece que el Poder Legislativo será ejercido por una Asamblea Legislativa compuesta por un Senado y una Cámara de Representantes. Véase, Const. PR. Art. V, Sec. 1, 1 LPRA, Tomo 1. Mientras que el Poder Ejecutivo lo ejercerá un Gobernador y el Poder Judicial el Tribunal Supremo de Puerto Rico y demás tribunales creados por ley. Véase, Const. PR Art. V, Sec. 1, Art. IV, Sec. 1 y Art. V, Sec. 1, LPRA, Tomo 1, respectivamente.

de poder en una de ellas.[40]   En   ese   ejercicio   de imperfecta separación  y delicado balance, pueden surgir ocasiones en que, al menos **inicialmente**, una rama de gobierno y otra tengan un poder de acción concurrente. Cuando ello ocurre, surge la necesidad de definir a quién le corresponde la **responsabilidad final de actuar**. Es decir, aun cuando se susciten circunstancias en que pueda existir un campo de acción compartido, le corresponderá a una de las ramas ejercer la responsabilidad final de determinar la validez de la acción tomada. Ello, como condición necesaria para el efectivo ejercicio de los poderes expresamente delegados en la Constitución.

Eso es lo que ocurre, precisamente, con la regulación de la profesión legal en Puerto Rico para la cual tanto el Poder Legislativo como el Poder Judicial cuentan con facultades concurrentes. Por un lado, no hay duda alguna de que la Constitución estatal no tan solo delega al Tribunal Supremo de Puerto Rico el Poder Judicial, sino que además le encomienda la responsabilidad de administrar los tribunales y nuestro sistema de justicia del cual los abogados son parte integral.[41] Siendo así, cualquier asunto concerniente a la reglamentación de los abogados forma

---

[40] Banco Popular v. Corte, 63 DPR 66, 71-72 (1944). Véanse, además, J.J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2010, págs. 235-237; G. Stone, et al., Constitutional Law, Aspen Publishers, 6th ed., 2009, págs. 355-358.

[41] Art. V, Sec. 1 y 6, 1 LPRA, Tomo 1. Véase, además, 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico, 2608-2615; In re Aprobación de las Reglas para Procedimientos de Investigación, 184 DPR 575 (2012); Freire Ayala v. Vista Rent, 169 DPR 418, 444-445 (2006); Vives Vázquez v. ELA, 142 DPR 117, 141 (1996).

parte de las prerrogativas constitucionales de este Tribunal Supremo. Por otro lado, es evidente el poder de razón de estado con el que cuenta la Asamblea Legislativa para promulgar la legislación que entienda conveniente para salvaguardar el bienestar y la seguridad de la ciudadanía en general.[42]

Ahora bien, desde hace más de cien años, este Tribunal estableció que las pautas y regulaciones referentes a los abogados y abogadas constituye una función inherente e inseparable de este Tribunal como representante máximo del Poder Judicial.[43] Esto, toda vez que los abogados son

---

[42] Domínguez Castro v. ELA, 178 DPR 1, 36 (2010). Véase, además, R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. C. Abo. PR, 1988, Vol. II, pág. 923.

[43] Según el profesor constitucionalista Henry Rottschaefer, "[e]l término inherente solo significa que el poder en cuestión fue incluido implícitamente en la concesión hecha por la Constitución en la distribución de poderes gubernamentales, aunque a veces se usa para indicar que la facultad en cuestión necesariamente pertenece a un departamento independientemente de la concesión constitucional". (Traducción nuestra). H. Rottschaefer, Handbook of American Constitutional Law, St. Paul. Minn., West Publishing Co., 1939, págs. 52-53, escolio 31.

Respecto a esta facultad inherente reclamada por este Tribunal, el profesor Guillermo Figueroa Prieto explica lo siguiente:

> Si algo ha quedado claro en las decisiones del Tribunal Supremo desde principios del siglo pasado hasta nuestros tiempos es que el Tribunal Supremo de Puerto Rico siempre ha reclamado tener poder inherente para reglamentar la abogacía. Tal poder descansa en el imperativo constitucional que emana de la doctrina de separación de poderes y que deposita en el Poder Judicial la facultad de administrar todo lo relativo a la administración del sistema de justicia, incluyendo la reglamentación de los abogados, ya que estos son considerados funcionarios del tribunal.

G. Figueroa Prieto, Propuesta para la reglamentación de la conducta profesional, 81 Rev. Jur. UPR 1, 15 (2012).

Aunque durante los debates la Convención Constituyente no hubo mención específica sobre el poder inherente de las Cortes para la regulación de los abogados, este no era un concepto ajeno para los redactores de nuestra Constitución. Particularmente, en lo que

funcionarios de los tribunales que representan una pieza clave para el efectivo ejercicio del poder constitucional de administrar la justicia.[44] Como consecuencia, son los miembros de este Tribunal Supremo quienes tienen la responsabilidad última de determinar qué reglamentación o normativa es aplicable a la clase togada de Puerto Rico.

En ese contexto, la legislación promulgada a tales fines por la Asamblea Legislativa será única y exclusivamente de carácter directivo y bajo ninguna circunstancia mandatoria.[45] Es por ello, que habrá ocasiones en que este Tribunal sostenga la validez de la legislación aprobada como una medida *auxiliar* a su poder inherente, pero habrá otras instancias en que tal legislación sea anulada por constituir una extralimitación de poder frente a las facultades inherentes de este

---

respecta a la Rama Judicial. Véase, e.g., Transcripción de las Vistas Públicas ante la Comisión de la Rama Judicial de la Convención Constituyente, pág. 165.

[44] In re Díaz Nieves, 189 DPR 1000, 1020 (2013); In re Cuyar Fernández, 163 DPR 113, 117 (2004); In re Santiago Rodríguez, 160 DPR 245, 254 (2003); Pueblo v. Susoni, 81 DPR 124, 154 (1959); In re Bosch, 65 DPR 248, 252 (1945); In re Rivera Colón, 63 DPR 713, 719 (1944); Boneta Ex Parte, 65 DPR 154, 160 (1929); In re Flores, 37 DPR 784, 785 (1928); In re Tormes, 30 DPR 267, 269 (1922); Pereyó v. López, et al., 22 DPR 780, 785 (1915); In re Díaz, 16 DPR 82, 92 (1910).

[45] Véase, In re Dubon Otero, 153 DPR 829, 859 (2001); In re Fund. Fac. Der. E. Ma. de Hostos II, 150 DPR 508, 512 (2000) (Resolución); López Santiago, Ex parte, 147 DPR 909, 912 (1999); Colegio de Abogados de Puerto Rico v. Schneider, 112 DPR 540, 546 (1982); In re Rodríguez Torres, 106 DPR 698, 733 (1978) (Resolución) (Op. de Conformidad J. Martín); In re Liceaga, 82 DPR 252, 255 (1961); González v. Tribunal Superior, 75 DPR 585, 671 N. 9 (1953); In re Pagán, 71 DPR 761, 763 (1950); In re Abella, 67 DPR 229, 238 (1947); In re González Blanes, 65 DPR 381, 391 (1945); In re Bosch, 65 DPR 248, 251 (1945); Ex Parte Jiménez, 55 DPR 54, 55 (1939).

Tribunal.[46] Ello, como consecuencia natural del principio de separación de poderes que rige en nuestro ordenamiento y de donde emana nuestro poder inherente para regular la profesión de la abogacía.[47]

Dentro de ese marco de preeminencia del Poder Judicial frente al Poder Legislativo, este Tribunal **siempre** ha enfatizado el carácter directivo y no mandatorio de la legislación promulgada referente a los abogados y abogadas.[48] En consonancia con ello, en múltiples ocasiones este Tribunal Supremo ha anulado u obviado legislación "que ha tenido el efecto de privar o menoscabar el derecho inherente de las cortes" de regular la profesión legal.[49] Basta un simple repaso de algunas de las opiniones emitidas por este Máximo Foro para constatar lo arraigado y presente

---

[46] Como ejemplo de algunas instancias en que este Tribunal Supremo ha validado la legislación promulgada por la Asamblea Legislativa concernientes a los abogados y abogadas, véanse Colegio de Abogados de PR v. Schneider, 112 DPR 540 (1982) y Colegio de Abogados v. ELA, 181 DPR 92 (2011) (Resolución). En este último, el Tribunal Supremo declaró no ha lugar un recurso de revisión solicitado por el Colegio de Abogados y ordenó la publicación de la Sentencia emitida por el Tribunal de Apelaciones, mediante la cual se validó la Ley Núm. 121-2009 y la Ley Núm. 135-2009. Como ejemplo de algunos casos en que se ha invalidado la legislación por entender que la misma constituía una usurpación al poder inherente de este Tribunal Supremo, véanse Boneta Ex Parte, 39 DPR 154 (1929); Ex Parte Jiménez, 55 DPR 916 (1939). Este poder para anular la legislación ha sido reiterado en múltiples ocasiones. Véanse, e.g., In re González Blanes, 65 DPR 381, 391 (1945); In re Dubon Otero, 153 DPR 829, 859-860 (2001) (Voto Particular de Conformidad del J. Rivera Pérez).

[47] En palabras del profesor Guillermo Figueroa Prieto, "el fundamento más sólido que se expone hoy día es que la doctrina del poder inherente responde a principios constitucionales que emanan de la separación de poderes. El raciocinio de este fundamento es que todo lo relacionado a la administración y funcionamiento de los tribunales es privativo del Poder Judicial". (Citas omitidas). G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 Rev. Jur. UPR 729, 769 (1999)

[48] Véase escolio número 7.

[49] In re González Blanes, 65 DPR 381, 391 (1945).

que ha estado en nuestro ordenamiento el remedio que hoy proveemos.

Una de las primeras manifestaciones de esta situación concernió a la Ley Núm. 78 de 11 de mayo de 1928, la cual disponía, entre otros asuntos, que aquellos graduados como abogados en una universidad acreditada en Europa o Estados Unidos podían ser admitidos a ejercer la abogacía en Puerto Rico sin necesidad de tomar la reválida.[50] Basado en esa legislación, en Boneta Ex Parte, 39 DPR 154 (1929), dos graduados de derecho de universidades estadounidenses acudieron ante esta Curia para solicitar admisión al foro local. El Tribunal Supremo denegó tal solicitud basado en el principio de supremacía del Poder Judicial en esta materia frente al cual el Poder Legislativo no podía establecer ley alguna que le obligara. Sobre este particular, el Tribunal Supremo expresó lo siguiente:

> …la facultad de admisión de aspirantes al ejercicio de la abogacía, es más poder judicial que de ningún otro poder. **Indudablemente, si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia, si ellos cooperan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos se encuentran, por virtud de las disposiciones de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a los que pretenden ser sus auxiliares y cooperadores en la más alta**

---

[50] Véase Ley Núm. 78 de 11 de mayo de 1928. LPR, 1928, págs. 533-534. Esta legislación enmendó la Ley Núm. 38 de 13 de abril de 1916, conocida como "Ley determinando reglas para el ejercicio de la profesión de abogado en Puerto Rico".

**misión que puede encomendarse a un hombre o a un conjunto de hombres.**[51]

Unos años más tarde, este Tribunal enfrentó una situación similar en Ex Parte Jiménez, 55 DPR 916 (1939). En esa ocasión, un aspirante a abogado graduado de la Universidad de Puerto Rico solicitó ser admitido al ejercicio de la abogacía sin tomar la reválida. De acuerdo a este, el Tribunal tenía que conceder tal admisión, ya que la Ley Núm. 1 de 21 de mayo de 1933 expresamente disponía que las personas que obtuvieren el grado de Bachiller en Leyes de la Universidad de Puerto Rico no estarían obligadas a tomar el referido examen. Una vez más, el Tribunal Supremo se amparó en su poder inherente para regular la profesión y no aceptó la condición impuesta por la Asamblea Legislativa. Al respecto, esta Curia expresó lo siguiente:

> De acuerdo con la jurisprudencia citada debemos resolver que las disposiciones de la sección 1 de la Ley núm. 1 de marzo 21 de 1933, invocadas por el peticionario como base de su alegado derecho a ser admitido sin examen, **constituyen <u>condiciones mínimas fijadas por el poder legislativo, que en nada obligan a esta Corte Suprema</u>, la cual conserva intacta su facultad inherente y estatutaria de fijar las condiciones y requisitos que deberán cumplirse por todo solicitante de una licencia de abogado.**[52]

Posteriormente, esta vez en el contexto de un procedimiento disciplinario de desaforo, en In re Abella, 67 DPR 229 (1947), dilucidamos si procedía desaforar al

---

[51] (Énfasis y subrayado suplido). <u>Boneta Ex Parte</u>, supra, págs. 165-166.
[52] (Énfasis y subrayado suplido). *Ex Parte Jiménez*, 55 DPR 54, 57 (1939).

entonces abogado Luis Abella Blanco, aun cuando la ley disponía que ello no procedía porque al momento había sido convicto por un delito que implicaba depravación moral. Nuevamente, el Tribunal rechazó la contención de brindarle carácter de obligatoriedad a una ley que regulaba el ejercicio de la profesión legal y ordenó el desaforo del licenciado Abella Blanco. Específicamente, afirmó lo siguiente:

> En primer lugar, tenemos poder inherente para disciplinar a los miembros del foro. **La Ley de 1909 sólo es directiva, y no mandatoria para este Tribunal.** Bajo nuestro poder inherente, es nuestro deber desaforar a Abella si por su conducta ha demostrado, no necesariamente en el ejercicio de la profesión de abogado, que no es digno de ser un miembro del foro.[53]

Como vemos, tales determinaciones demuestran que el poder inherente de este Tribunal es una prerrogativa centenaria que en ningún momento hemos vacilado en ejercer como máximos custodios de la profesión legal cuando entendemos que la legislación promulgada no es cónsona o es contraria a nuestras facultades. El ejercicio de la integración de la profesión de la abogacía mediante la afiliación obligatoria a una institución, no está ajeno a esta norma básica de la preeminencia de la acción judicial.

En otros términos, la integración de la profesión legal no ha dependido, y en ningún momento dependerá, de lo que disponga la Asamblea Legislativa sobre el particular, sino de lo que decida el Poder Judicial. Esto, porque como explicamos

---

[53] (Énfasis y subrayado suplido). (Citas omitidas). In re Abella, 67 DPR 229, 238 (1947).

anteriormente, aunque *inicialmente* la Asamblea Legislativa ostenta la prerrogativa de legislar sobre el particular basado en su poder de razón de estado, la responsabilidad última de determinar si ello procede o no es exclusiva de este Tribunal Supremo por virtud de su poder inherente.

Así lo reconoció este Tribunal, incluso, en Colegio de Abogados de PR v. Schneider, 112 DPR 540, 546 (1982), al expresar que la preeminencia de la acción judicial en este campo "incluye naturalmente la facultad de pasar juicio sobre si debe unificarse o no el foro en una jurisdicción y bajo qué condiciones". De hecho, en aquella ocasión, los miembros de esta Curia, por voz del entonces Juez Presidente señor Trías Monge, expresaron que la magnitud del poder inherente de este Tribunal Supremo es tal, que aun ante la existencia de una legislación que prohíba la colegiación obligatoria, el Tribunal puede disponer lo contrario.[54]

Bajo esas circunstancias, si la Asamblea Legislativa interesa *recomendar* que adoptemos alguna regulación o requisito para el ejercicio de la abogacía en Puerto Rico como medida auxiliar a nuestro poder inherente, esta deberá

---

[54] Específicamente, el Tribunal expresó lo siguiente:

> La integración se ha realizado por acción legislativa en muchos casos y en otros por regla de la corte estatal de última instancia, bien por poder expresamente conferido o en el ejercicio de su poder inherente.

> El poder inherente de los tribunales en este campo es de tal magnitud que, aun ante la existencia de un estatuto que prohíba expresamente la colegiación compulsoria, se ha ejercido el poder judicial para disponer exactamente lo contrario.

(Citas omitidas). Colegio de Abogados v. Schneider, supra, págs. 547-548.

expresar claramente las razones de peso que le motivaron a promulgar la legislación correspondiente, de manera que ubique a esta Curia en posición de evaluar los méritos de la propuesta. Después de todo, siendo la regulación de la abogacía materia inherente a los poderes constitucionales de este Tribunal, **es la Asamblea Legislativa quien tiene el deber de explicar las razones para legislar sobre el particular y no viceversa.** Máxime cuando ya existían manifestaciones de este Tribunal que consignaban nuestra posición sobre el requisito colegiación propuesto.[55]

En el caso particular de la Ley Núm. 109-2014, la cual establece el requisito de colegiación como condición necesaria para ejercer la profesión legal en Puerto Rico, la propia Asamblea Legislativa reconoció que la regulación de la profesión legal es función inherente del Poder Judicial, específicamente de este Tribunal Supremo.[56] Aun así, livianamente entendió que era necesario promulgar la Ley Núm. 109 como complementaria a ese poder y para ello explicó que

> existe un interés apremiante que tiene que ser protegido por esta Asamblea Legislativa el cual consiste en que todas las personas que practiquen la profesión legal en el Estado Libre Asociado de Puerto Rico pertenezcan a un colegio integrado de abogados y abogadas que represente una garantía para la ciudadanía de tener acceso a una representación legal digna, capacitada, íntegra y diligente.[57]

---

[55] Véase, Col. De Abogados v. ELA, 181 DPR 135 (2011) (Resolución).

[56] Exposición de Motivos de la Ley Núm. 109-2014, pág. 4.

[57] Íd., pág. 3.

Más adelante, la Exposición de Motivos añade lo siguiente:

> Cuando se trata de la abogacía y el notariado, el interés apremiante del Estado es ofrecerle las garantías adicionales de una colegiación integrada. Junto con el poder inherente del Tribunal Supremo de Puerto Rico para regular la profesión, la colegiación integrada de abogados y abogadas, de notarios y notarias, ofrece una estructura adicional de apoyo y -en el buen sentido- de contrapeso en el rol de garantizar a la ciudadanía las mejores prácticas profesionales posibles. Este binomio de autoridad estatal reguladora y colegio integrado se repite en prácticamente todas las profesiones y oficios de alta responsabilidad pública como lo son los médicos cirujanos, los ingenieros, los trabajadores sociales y otros. La única distinción es que en el caso de las demás profesiones y oficios la autoridad reguladora surge de delegación legislativa al Ejecutivo y en el caso de la abogacía y el notariado surge del poder inherente del Tribunal Supremo de Puerto Rico.
>
> En el caso de la abogacía, el interés apremiante del Estado Libre Asociado en colegiar surge de que sus practicantes son custodios del patrimonio, el derecho a la libertad, a la protección o reivindicación de las víctimas de delito, a la propiedad, a las libertades y derechos civiles reconocidos constitucionalmente, a la asistencia social, a las relaciones paterno filiales, al disfrute de la vida y -en ocasiones- al derecho a la vida misma. La práctica del derecho comprende una amplia gama de ofrecimientos de servicios en la cual el profesional del derecho ostenta un amplio poder de acción en relación a la causa de su cliente o clienta. El ejercicio de este poder requiere un altísimo nivel de responsabilidad y por lo tanto regulación estricta. Esta regulación constituye un interés apremiante para el Estado Libre Asociado de Puerto Rico en su deber de velar por la protección de sus ciudadanos y ciudadanas, entidades y el tráfico comercial.[58]

De una lectura del informe presentado por la Comisión de los Jurídico de la Cámara de Representante sobre lo que

---

[58] Íd., pág. 4. Véase, además, Art. 1 de la Ley Núm. 109-2014.

hasta ese momento era el Proyecto de la Cámara 1366, no surge explicación adicional a la citada anteriormente.[59] Únicamente, se añade que "[n]uestro sistema republicano de gobierno tiene un interés apremiante en regular la abogacía; [sic] en que toda persona tenga una representación legal adecuada y en velar por el acceso de los ciudadanos a la justicia".[60]

Por su parte, la Comisión de lo Jurídico, Seguridad y Veteranos del Senado de Puerto Rico expuso en su Informe Positivo sobre el P. de la C. 1366 que "la colegiación es fundamental para garantizar la excelencia profesional".[61] Así, explicaron que "[e]l Estado tiene un interés apremiante de proteger y fortalecer la profesión jurídica y los servicios que brinda el colegio".[62] Por ello, concluyeron que es

> necesario que se mantenga una sola entidad colegiada para la profesión de la abogacía en Puerto Rico. De esta manera, se asegura brindar los recursos necesarios al Colegio, para cumplir con su labor encomiable de buscar el acceso a la justicia, de brindar una representación digna y de ser defensor y representante [de] todos los abogados de Puerto Rico.[63]

---

[59] Véase Informe de la Comisión de lo Jurídico de la Cámara de Representantes de Puerto Rico sobre el P. de la C. 1366 emitido el 18 de octubre de 2013.

[60] Íd., pág. 14.

[61] Informe Positivo del P. de la C. 1366 de la Comisión de lo Jurídico, Seguridad y Veteranos del Senado de Puerto Rico emitido el 24 de junio de 2014.

[62] Íd., pág. 12.

[63] Íd.

Estas tres expresiones ofrecidas en distintas instancias del quehacer legislativo, en esencia reflejan dos razones como explicación para obligar a los abogados y abogadas a colegiarse: *primero*, la presunta necesidad de contar con una entidad que "apoye" a este Tribunal en su responsabilidad de supervisar y fiscalizar a los miembros de la profesión legal y; *segundo*, la importancia de asegurar que el Colegio de Abogados cuente con los recursos económicos necesarios que viabilice su subsistencia y funcionamiento.

No obstante, en ningún documento del historial legislativo, y mucho menos en el alegato presentado por la Oficina de la Procuradora General, se incluye fundamento alguno que demuestre y nos persuada a pensar que, en efecto, este Tribunal necesita del apoyo de una institución externa para cumplir con su responsabilidad de supervisar y fiscalizar a los miembros de la clase togada del País.[64] Siendo así, el Estado falló en brindar una explicación que justificara el que este Tribunal avalara la legislación adoptada.

Finalmente, aprovecho este contexto para enfatizar que la Asamblea Legislativa debe tener presente que toda intervención con la reglamentación de la abogacía tiene el *potencial* de ser una intromisión indebida con el poder inherente de este

---

[64] Véase el historial legislativo de la Ley Núm. 109-2014, el cual incluye, entre otros documentos, el Informe Positivo del P. de la C. 1366 de la Comisión de lo Jurídico de la Cámara de Representantes de Puerto Rico emitido el 18 octubre de 2013; el Informe Positivo del P. de la C. 1366 de la Comisión de lo Jurídico, Seguridad y Veteranos del Senado de Puerto Rico emitido el 24 de junio de 2014. Así como, las ponencias presentadas por el Colegio de Abogados de Puerto Rico el 20 de septiembre de 2013 y por el Departamento de Justicia el 8 de octubre de 2013. Véase, además, *Alegato del Estado Libre Asociado de Puerto Rico en solicitud de desestimación de las demandas consolidadas de epígrafe* presentado el 11 de agosto de 2014.

Tribunal para reglamentar la profesión legal. Por lo tanto, y tomando en cuenta el carácter directivo de tales medidas, esta debe brindar una explicación que persuada a los miembros de este Tribunal a acoger la correspondiente legislación como una medida auxiliar a nuestro poder reglamentario.[65]

Ciertamente, como miembro de este Máximo Foro tengo la responsabilidad ministerial y el más genuino interés de asegurar que los abogados y abogados rijan su conducta profesional por los más altos estándares éticos y que la ciudadanía en general tenga acceso a servicios legales de primer orden. Ahora bien, es mi criterio judicial que para la consecución de tales objetivos resulta innecesario *obligar* a todos los profesionales del Derecho a adscribirse a una

---

[65] No podría ser de otra manera, pues como parte del entendido de la separación de poderes establecido en la Constitución de Puerto Rico, no se justificaría que la Asamblea Legislativa, *sin más*, imponga al Poder Judicial unas condiciones que interfieran directamente con las funciones y prerrogativas que nuestra Carta Magna delegó exclusivamente al Poder Judicial. Lo contrario, sería una intromisión indebida con las labores de administración de la justicia y crasa violación al principio básico de independencia judicial. Véase, 1 Diario de Sesiones de la Convención Constituyente, pág. 617, de donde surge claramente la importancia de la autonomía en la administración de los tribunales como parte esencial del principio de independencia judicial. Como bien expresa el profesor Guillermo Figueroa Prieto,

> [e]n nuestra jurisdicción, por el contrario, el Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico claramente adscribe el Poder Judicial al Tribunal Supremo y lo faculta para adoptar reglas sobre la administración de los tribunales. **Fue la intención de los delegados a la Asamblea Constituyente proteger la independencia de la Rama Judicial, por lo que concederle a dicha rama de gobierno el control primario sobre la abogacía estaría en armonía con tal intención.**

(Énfasis suplido). G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, supra, pág. 769. Véase, además, J. Fuster, La Misión del Abogado en el Mundo Contemporáneo y sus Implicaciones para las Escuelas de Derecho, el Tribunal Supremo y el Colegio de Abogados, 36 Rev. Jur. UPR 579, 622 (1967).

entidad en particular.[66] Por todo lo anterior, estoy conforme con el dictamen que toma este Tribunal de declarar inconstitucionales los Artículos 5, 6 y 11 de la Ley Núm. 109-2014.


                                        Edgardo Rivera García
                                        Juez Asociado

---

[66] Como bien surge de la Opinión de este Tribunal, la experiencia por los pasados cinco años así lo ha demostrado. Véase inciso (c) de la Opinión, págs. 32-36.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lcdo. Thomas Rivera Schatz

    Peticionario

       v.

Estado Libre Asociado de
Puerto Rico, por conducto
del Secretario de Justicia,       CT-2014-0008
Hon. César Miranda; Colegio
de Abogados de Puerto Rico,
por conducto de su
Presidenta, Lcda. Ana Irma
Rivera Lassen

    Recurridos

---------------------------

Asociación de Abogados de
Puerto Rico; Héctor R.       CT-2014-0009
Ramos Díaz; Rafael Sánchez
Hernández

    Peticionarios

       v.

Colegio de Abogados y
Abogadas de Puerto Rico;
Estado Libre Asociado de       CT-2014-0010
Puerto Rico

    Recurridos

Carlos Rivera Justiniano,
Carlos Pérez Toro, Juan M.
Gaud Pacheco, Félix Colón
Serrano, María Fullana
Hernández, Carmelo Ríos
Santiago, Miguel Romero
Lugo, Mario Santurio
González, Carlos Sagardía
Abreu, Luis Dávila Colón,
José Meléndez Ortiz,
Valerie Rodríguez Erazo y
Elías Sánchez Sifonte

    Interventores

Opinión disidente emitida por la Jueza Presidenta SEÑORA FIOL MATTA, a la que se une la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ y la Jueza Asociada ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 3 de noviembre de 2014.

El 16 de octubre de 2014, una mayoría de este Tribunal empleó una metodología adjudicativa imprecisa y ambivalente para resolver que los Artículos 5, 6 y 11 de la Ley 109-2014 (Ley de Colegiación Obligatoria) son inconstitucionales porque inciden sobre nuestro poder inherente para reglamentar la profesión legal. A pesar que el trámite procesal atropellado de este caso no permitió el desarrollo de un expediente adecuado y completo, la mayoría injustificadamente cambió la forma en que hemos ejercido por décadas nuestro poder inherente. Peor aún, no respetó las restricciones que impone la doctrina de autolimitación judicial y se adentró a evaluar asuntos constitucionales que no era necesario atender. Al hacerlo, alteró de forma incomprensible el estado de derecho hasta entonces vigente— reiterado durante décadas por este Tribunal— según el cual la colegiación obligatoria no vulnera el derecho a la libre asociación de los miembros de la clase togada.

La mayoría ancla su determinación a una conclusión de derecho sin premisas fácticas que la sustenten, imposibilitando el análisis sosegado y ponderado de las controversias que este caso presenta. Además, los fundamentos plasmados en la Opinión son inherentemente ambiguos y adolecen de una inconsistencia tal que raya en la arbitrariedad. Eso los lleva a tomar una decisión

incorrecta, pero más importante aún, vulnera nuestra legitimidad como máximos intérpretes de la Constitución.

I

El 28 de julio de 2014, el Estado Libre Asociado de Puerto Rico (Estado) promulgó la Ley de Colegiación Obligatoria. Entre otras cosas, esta legislación derogó la Ley Núm. 121-2009 y la Ley Núm. 135-2009 (Leyes de Descolegiación) y restituyó la obligación de matricularse en el Colegio de Abogados y Abogadas de Puerto Rico como requisito indispensable para ejercer la profesión legal en Puerto Rico.

Ese mismo día, el licenciado Thomas Rivera Schatz impugnó la validez de la Ley. En su demanda, alegó que las disposiciones que exigen la colegiación obligatoria eran contrarias a su derecho constitucional a la libertad de asociación y expresión, y que usurpaban el poder inherente de este Tribunal para reglamentar la profesión de la abogacía. Simultáneamente, sin haber emplazado a las partes que demandó, el licenciado Rivera Schatz presentó un recurso de certificación intrajurisdiccional para que este Tribunal atendiera la controversia directamente. Asimismo, solicitó un *injunction* preliminar para paralizar los efectos de la Ley hasta tanto resolviéramos finalmente.

Al día siguiente, una mayoría de este Tribunal expidió el recurso de certificación intrajurisdiccional y paralizó los efectos de la Ley de Colegiación Obligatoria, sin trámite ulterior. Concedió al licenciado Rivera Schatz un término para que acreditara el emplazamiento de los

demandados y decretó otro término de diez días para que las partes presentaran sus alegaciones afirmativas y alegatos.

El Estado, representado por la Oficina de la Procuradora General, se opuso y presentó una *Solicitud Urgente de Reconsideración* para que se denegara el recurso. En la alternativa, solicitó que se designara un Comisionado Especial que recibiera la prueba necesaria para desarrollar un expediente completo y suficiente, como se hizo en Colegio de Abogados de P.R. v. Schneider (I).[67] Sin embargo, la mayoría denegó esa solicitud sin explicación alguna.

Posteriormente, se expidieron y consolidaron otros dos recursos similares de certificación intrajurisdiccional, presentados por la Asociación de Abogados de Puerto Rico, el licenciado Héctor Ramos Díaz y el licenciado Rafael Sánchez Hernández,[68] así como los licenciados John E. Mudd y John A. Stewart.[69] Además, se concedió la intervención de más de una docena de licenciados y licenciadas, y se acogieron varios escritos de amigos de la corte.[70]

II

Antes de considerar los méritos de las alegaciones de las partes, miremos de cerca la utilización del recurso excepcional de certificación intrajurisdiccional en esta controversia. Su correcta evaluación nos requiere repasar

---

[67] Colegio de Abogados de P.R. v. Schneider (I), 112 DPR 540 (1982) (En adelante, Schneider (I)).
[68] CT-2014-9.
[69] CT-2014-10.
[70] Véase la Opinión mayoritaria, págs. 8 y 9.

aspectos básicos del funcionamiento y la estructura de nuestro ordenamiento judicial.

A

El ejercicio del Poder Judicial opera en un esquema de tres niveles compuesto por el Tribunal de Primera Instancia, el Tribunal de Apelaciones y el Tribunal Supremo.[71] Juntos, componen el Tribunal General de Justicia. Salvo contadas excepciones constitucionales y estatutarias,[72] un caso inicia su trámite ordinario en el Tribunal de Primera Instancia, foro encargado de recibir y evaluar prueba y adjudicar valor probatorio a la evidencia sometida por las partes.[73] Una vez el tribunal emite su dictamen, la parte que no esté conforme tiene la opción de acudir ante el Tribunal de Apelaciones. Ese foro determinará si la decisión del Tribunal de Primera Instancia es conforme a derecho.[74] Nuevamente, si una de las partes discrepa de lo decidido por el foro apelativo intermedio, puede acudir al Tribunal Supremo que, como norma general, será el foro de última instancia.[75]

Este trámite permite que cuando el caso llegue ante nuestra consideración tengamos el beneficio de un expediente que incluya la prueba presentada ante el Tribunal de Primera Instancia, las determinaciones de hechos de ese tribunal y el análisis jurídico realizado por

---

[71] 4 LPRA sec. 24b.
[72] Art. V, sec. 5, Const. P.R., 4 LPRA sec. 24s.
[73] 4 LPRA sec. 25a.
[74] 4 LPRA sec. 24r. Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.
[75] 4 LPRA 24s. Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.

ese foro y por el Tribunal de Apelaciones. En el pasado, hemos señalado que es preferible que los casos maduren paulatinamente a través del trámite antes descrito, "pues ello permite que las controversias se diluciden y afinen sin que el foro de última instancia tenga que inmiscuirse a destiempo".[76]

El trámite ordinario de los procedimientos puede obviarse mediante la expedición de una certificación intrajurisdiccional. Este mecanismo de carácter discrecional "nos permite traer de inmediato ante nuestra atención asuntos que se encuentran ante la consideración de foros inferiores".[77] Por tanto, "por ser un recurso que nos permite circunvalar el trámite ordinario de un caso, su expedición es de carácter excepcional".[78]

Como bien explica el profesor Luis José Torres Asencio:

> La naturaleza extraordinaria de la certificación intrajurisdiccional encuentra su justificación en el importante propósito de asegurar que los asuntos de derecho considerados por nuestros tribunales se sometan a un riguroso análisis por las instituciones fundamentalmente distintas que componen el esquema de tres niveles de nuestro sistema judicial. De esta manera, culminado el trámite ordinario, la intervención del Supremo puede ceñirse exclusivamente a su función primordial en nuestro ordenamiento: pautar derecho mediante la formulación de normas jurídicas de aplicación general en el sistema legal.[79]

---

[76] Rivera Soto v. JCA, 164 DPR 1, 7 (2005).
[77] Íd.
[78] Íd.
[79] Véase L. J. Torres Asencio, Carril expreso al Supremo, 80grados, 18 de mayo de 2012, (http://www.80grados.net/carril-expreso-al-supremo/#footnote_10_11976) (última visita 5 de octubre de 2014).

Por su carácter excepcional, al ejercer nuestra discreción para autorizar una certificación intrajurisdiccional, debemos considerar los siguientes elementos: (1) la urgencia, (2) la etapa en que se encuentran los procedimientos, (3) la necesidad que puede presentarse de recibir prueba y (4) la complejidad de la controversia.[80] Desafortunadamente, en tiempos recientes, una mayoría de este Tribunal ha utilizado el recurso de certificación desmesuradamente, y lo ha hecho en ausencia de justificaciones razonables que comuniquen la urgencia por la cual debamos prescindir del trámite ordinario.[81] Por ende, no es de extrañar que numerosos juristas y académicos hayan criticado con vehemencia esa tendencia de expedir selectivamente este recurso para resolver a destiempo ciertas controversias. Por ejemplo, el profesor Efrén Rivera Ramos señala lo siguiente:

> [P]reocupa el uso frecuente de los recursos de certificación para elevar cuestiones litigiosas al Tribunal Supremo sin que se tenga el beneficio de desarrollar un récord fáctico apropiado en los tribunales inferiores. Si bien en determinadas y excepcionales ocasiones el recurso de certificación puede servir laudables fines de interés público, su generalización y abuso puede trastocar seriamente la administración de la justicia. Mal utilizado, puede privar a los

---

[80] 4 LPRA Ap. XXI-B, R. 23. Véase J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. JTS, 2011, T.IV, págs. 1541-1543.

[81] El profesor Torres Asencio señala que "[e]n los últimos tres años, el Tribunal ha mostrado particular interés por certificar, y por ende, eximir del trámite adjudicativo ordinario, casos que involucran conflictos de índole político-partidista, y en casos en los que se cuestionaban actuaciones y/o políticas gubernamentales que generaron considerable polémica entre distintos sectores de la sociedad civil". L. J. Torres Asencio, Carril expreso al Supremo, 80grados, 18 de mayo de 2012, (http://www.80grados.net/carril-expreso-al-supremo/#footnote_10_11976) (última visita 5 de octubre de 2014).

> litigantes, sobre todo a los que litigan
> contra el Estado, de la oportunidad de
> presentar adecuadamente sus reclamos, probar
> sus alegaciones y refutar las alegaciones
> del Estado demandado. En fin, puede
> escamotearles el derecho a que sus derechos
> se adjudiquen sobre bases fundadas en hechos
> establecidos mediante procesos confiables y
> justos. Ese abuso puede constituir, en
> definitiva, una privación efectiva a los
> litigantes de su día en corte.[82]

B

Este caso es un claro ejemplo de esta tendencia, pues el recurso de certificación intrajurisdiccional se expidió en ausencia de justificación jurídica y sin considerar los criterios que hemos establecido para su expedición. En primer lugar, no existía la urgencia necesaria, pues el Artículo 13 de la Ley de Colegiación Obligatoria pospuso el imperativo de colegiarse hasta noventa días después del 1 de enero de 2015.[83] En segundo lugar, la demanda sólo llevaba un día de presentada. Tampoco se habían hecho los emplazamientos correspondientes. También, necesitábamos prueba que nos permitiera ejercer con mesura nuestra labor adjudicativa, tomando en cuenta que los demandantes alegaron que la legislación contravenía la doctrina de separación de poderes y violaba sus derechos constitucionales y que no había un interés apremiante del

---

[82] E. Rivera Ramos & J. Farinacci Fernós, Derecho Constitucional, 80 Rev. Jur. UPR 603, 635 (2011).

[83] Véanse los votos particulares disidentes de la Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez. Thomas Rivera Schatz v. ELA, et. als, 2014 TSPR 92, 191 DPR ___ (2014). El Artículo 13 de la Ley de Colegiación Obligatoria dispone que "[l]os abogados que a la fecha en que entre en vigor esta Ley no estén colegiados deberán cumplir con dicho requisito en un término no mayor de noventa (90) días a contarse desde el 1ero de enero del próximo año natural posterior a la entrada en vigor de esta Ley". A pesar de la claridad del texto legislativo, la mayoría paralizó los efectos de la ley.

Estado que justifique la interferencia con los derechos de los y las demandantes.

El análisis adjudicativo de interés apremiante propuesto por la parte demandante requería recibir y aquilatar prueba para poder determinar si el Estado cumplía con ese interés. Sin embargo, una mayoría de este Tribunal certificó el caso y lo removió del foro que recibiría la prueba y escucharía los testimonios, adjudicaría su valor probatorio y haría una determinación, precisamente, sobre el interés gubernamental perseguido al adoptar la ley en controversia. Tampoco concedió la solicitud del Estado de que se designara un Comisionado Especial que recibiera la prueba, a pesar de que esta herramienta se ha utilizado anteriormente en casos como éste, que se han certificado intrajurisdiccionalmente antes de celebrarse una vista evidenciaria.[84] Por todo lo anterior, no procedía la utilización del recurso excepcional de certificación intrajurisdiccional.

III

Sin embargo, no se trata tan sólo de cumplir con el trámite procesal que la controversia requiere. Cuando ejercemos nuestra facultad de mayor peso y repercusión, la de interpretar nuestra Constitución, tenemos el deber de delimitar responsablemente el alcance de nuestra función adjudicativa.

---

[84] AMPR v. Sist. Retiro Maestros IV, 2014 TSPR 58, 190 DPR ___ (2014). Hasta en el mismo Schneider (I), 112 DPR 540, 543 (1982), "[n]ombramos un Comisionado Especial para recibir la prueba que las partes interesasen presentar".

A

Nuestra función como intérpretes de la Constitución y la ley no tiene un alcance indefinido. La doctrina de autolimitación judicial, basada en consideraciones prudenciales y constitucionales, nos impone ciertas restricciones al momento de ejercer esa función.[85] En ELA v. Aguayo, adoptamos las restricciones que el Tribunal Supremo estadounidense estableció para guiar la evaluación de la validez constitucional de las leyes.[86] Entre éstas figuran las siguientes:

> 2.    --La Corte no se anticipará a decidir una cuestión de derecho constitucional antes de que sea necesario hacerlo.
> 3.    --La Corte no formulará una regla de derecho constitucional más amplia que la que requieran los hechos precisos a los cuales ha de aplicarse.
> 4.    --La Corte no juzgará una cuestión constitucional aunque haya sido sometida propiamente en los autos, si también se somete un fundamento de otra índole que permita disponer del caso.[87]

En ese caso hicimos énfasis particular en una restricción adicional, muy pertinente al caso que nos ocupa: "la Corte no entenderá en una cuestión constitucional si los autos no son adecuados para hacer una determinación de esa índole".[88]

---

[85] Brau, Linares v. ELA, 2014 TSPR 26, 190 DPR ___ (2014). Crespo v. Cintrón, 159 DPR 290, 298 (2003); ELA v. Aguayo, 80 DPR 554, 595-597 (1958). Véase, además, R. Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, Universidad Interamericana de Puerto Rico, 1997, Vol. I, pág. 195.

[86] ELA v. Aguayo, supra.

[87] Íd, pág. 596, citando Ashwander v. Tennessee, 297 US 288, 346 (1935). Véanse, además, International Ass'n of Machinists v. Street, 367 US 740, 749 (1961); Crowell v. Benson, 285 US 22, 62 (1932).

[88] Íd., citando a Parker v. Los Angeles, 338 US 327, 329 (1949); International Brotherhood v. Denver Milk Producers, 334 US 809 (1948); Rescue Army v. Municipal Court, 331 US 549, 575 (1946).

B

En el caso ante nuestra consideración se invocaron, principalmente, dos fundamentos, ambos revestidos de carácter constitucional: (1) la doctrina del poder inherente de este Tribunal para reglamentar la profesión de la abogacía, basada en la doctrina constitucional de la separación de poderes; y (2) los derechos constitucionales a la libertad de asociación y libertad de expresión. Como la interpretación pertinente al segundo fundamento incide sobre derechos constitucionales, no sólo de las partes, sino de la ciudadanía en general, la manera correcta y prudente de atender esta controversia, a la luz de las restricciones que impone la doctrina de autolimitación judicial, era la siguiente.

En primer lugar, está claramente establecido en nuestro ordenamiento que la Ley de Colegiación Obligatoria es directiva y no mandatoria. Por eso, antes de entrar en cualquier análisis constitucional, lo que este Tribunal tenía que decidir era si, en el ejercicio de su poder inherente, aceptaba o rechazaba dicha Ley. Si la aceptaba, procedería entonces evaluar las alegaciones de los demandantes sobre sus derechos constitucionales a la libre asociación y expresión. Si esa evaluación nos llevara a concluir que la ley no viola esos derechos al establecer la colegiación obligatoria, se sostendría su validez. La conclusión contraria, es decir, que la ley viola esos

derechos, conllevaría una declaración de inconstitucionalidad.[89]

Por otro lado, si el Tribunal decidiera que la Ley de Colegiación Obligatoria no complementa satisfactoriamente nuestra facultad para reglamentar la profesión, tan sólo tendría que ejercer su poder inherente y rechazarla. Al resolver de esta forma, la doctrina de autolimitación judicial nos exigiría abstenernos de pronunciamientos sobre los derechos constitucionales a la libertad de asociación y expresión.

Al atender la controversia de este caso, la mayoría obvió por completo y sin justificación esta estructura de análisis jurídico que nos exige la doctrina de autolimitación judicial. Ciertamente, este método puede descartarse en situaciones apropiadas, pero hacerlo requiere una justificación responsable que la Opinión mayoritaria no ofrece. Su posición sobre nuestro poder inherente para reglamentar la profesión y su consecuente rechazo a la Ley de Colegiación Obligatoria eran suficientes para disponer del caso; no debió pronunciarse sobre el derecho a la libre asociación.

IV

Comenzamos nuestro análisis sobre los méritos de la controversia examinando el poder inherente que tiene este Tribunal para reglamentar la profesión legal en Puerto

---

[89] Como discutiremos más adelante, a pesar de que la Opinión mayoritaria rechaza inicialmente los Artículos 5, 6 y 11 de la Ley de Colegiación, luego éstos son declarados inconstitucionales en virtud del poder inherente.

Rico, con el propósito de indagar sobre sus orígenes, su naturaleza y la prudencia que debe guiar el ejercicio del mismo. Esto porque, aunque de forma ambigua y ambivalente, la Opinión mayoritaria parece apoyar su dictamen en esa doctrina. En efecto, la Opinión expresa, que

> la controversia que nos corresponde resolver se reduce a examinar si el sistema de colegiación obligatoria es compatible con lo que esta Curia, al amparo de nuestro Poder Inherente para reglamentar la profesión legal, entiende debe ser un requisito para que los abogados ejerzan legítimamente su profesión en Puerto Rico.[90]

Esta expresión parece indicar que para contestar la interrogante sobre la compatibilidad de la ley con el ejercicio de nuestro poder inherente lo único que se requiere es evaluar si el establecimiento de la colegiación obligatoria contradice o contraviene de alguna forma nuestro poder inherente de reglamentación. A eso, según la Opinión, se limita o reduce el asunto.

A

El poder inherente para regular la profesión de la abogacía en Puerto Rico se deriva del principio de separación de poderes, plasmado en la sección 2 del Artículo I de nuestra Constitución.[91] La separación de poderes, además de delegar funciones específicas a cada rama gubernamental, implica la colaboración entre éstas en la consecución y realización de un gobierno democrático. Por lo tanto, "no significa que el gobierno se divide en tres compartimentos cerrados, sin conexión o dependencia

---

[90] Opinión mayoritaria, en la pág. 11.
[91] Art. I, Sec. 2, Const. ELA, LPRA Tomo 1.

entre ellos".[92] Así, el principio presupone "un delicado balance de poderes"[93] que a su vez se sirve de un sistema de pesos y contrapesos entre las tres ramas de gobierno. De esta manera, nuestra Constitución contempla que los poderes delegados a cada rama se complementen para evitar abusos de poder y asegurar la buena marcha de la gestión gubernamental.

La delegación de los poderes ejecutivo, judicial y legislativo a las tres ramas del gobierno ha resultado en la invocación por cada una de éstas de ciertos poderes inherentes a sus funciones y facultades. En lo que a nosotros respecta, desde muy temprano en nuestra historia, este Tribunal ha reclamado su poder inherente para regular la profesión de la abogacía en Puerto Rico, incluyendo la admisión y suspensión de abogados y abogadas en nuestra jurisdicción.[94] No obstante, con igual consistencia hemos reconocido la posibilidad de que una acción legislativa complemente nuestro poder inherente. Hemos afirmado que la Legislatura, al amparo de su poder de razón de estado, puede establecer requisitos para regular la admisión de abogados y abogadas al ejercicio de la profesión, sin usurpar nuestro poder inherente. Dicha legislación "sería

---

[92] In re Rodríguez Torres, 106 DPR 698 (1978).
[93] Hernández Agosto v. Betancourt, 118 DPR 79 (1986).
[94] In re Benítez Echevarría, 128 DPR 176, 176-177 (1991); In re Rivera Medina, 127 DPR 600 (1990); In re Concepción Velásquez, 126 DPR 474, 475 (1990); In re Berríos Pagán, 126 DPR 458, 459 (1990); In re Ángel Delgado, 120 DPR 518, 527 (1988); In re Díaz Alonso, Jr., 115 DPR 755, 760 (1984); In re Bosch, 65 DPR 248, 251 (1945) Ex parte Jiménez, 55 DPR 54 (1939); In re Abella, 14 DPR 748, 751 (1908). Véase, además, G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 Rev. Jur. UPR 729, 769-771 (1999).

'puramente directiva, no mandatoria' para este Tribunal".[95] Por tanto, hemos resuelto consistentemente hasta ahora, que este Tribunal, en virtud de su poder inherente, determinará si acoge o rechaza cualquier legislación que afecte nuestra función de reglamentar la profesión legal. Al igual que cualquier decisión en función del ejercicio de un poder constitucional, esta determinación requiere razones y fundamentos que la sustenten. La legitimidad del ejercicio de cualquier poder depende de su juricidad y, por tanto, de sus fundamentos. Por eso, siempre hemos sido cuidadosos en exponer las razones que justifican la adopción o el rechazo de legislación que, de una manera u otra, incide en nuestro poder inherente de reglamentación.

Este Tribunal ha confrontado medidas legislativas que complementan su poder de reglamentar la profesión primordialmente en tres aspectos: (1) los requisitos y condiciones para la admisión a la práctica de la profesión; (2) las sanciones disciplinarias que pueden imponerse a los abogados, y (3) el establecimiento de la colegiación obligatoria. Los intereses tutelados en estos contextos son distintos como también lo son las controversias que cada uno plantea con relación al ejercicio de nuestro poder inherente.

---

[95] In re Fund. Fac. Der. E. Ma. De Hostos II, 150 DPR 508, 512 (2000) (Resolución); López Santiago, Ex parte, 147 DPR 909, 912 (1999); Schneider (I), supra; K-Mart Corp. v. Walgreens of P.R., Inc., 121 DPR 633 (1988); In re Liceaga, 82 DPR 252, 255 (1961).

En el contexto de la admisión a la profesión, en Ex parte Boneta,[96] examinamos legislación que eximió del requisito de tomar el examen de reválida para la admisión al ejercicio de la abogacía a aspirantes que se hubiesen graduado como abogados de universidades acreditadas en Estados Unidos y Europa siempre y cuando probasen, a satisfacción de este Tribunal, que habían practicado durante por lo menos cinco años en un bufete autorizado o que hubiesen fungido como jueces municipales durante cuatro años. Dos aspirantes que cumplían con los requisitos establecidos en la Ley intentaron infructuosamente ser admitidos por el Tribunal Supremo a la práctica de la profesión. Resolvimos, en función de la doctrina de autolimitación judicial, que al emplear la frase "podrá ser admitido" y no el imperativo "deberá ser admitido" la Legislatura no menoscabó la facultad judicial de admitir abogados al Foro. Consideramos innecesario atender el asunto relativo a la intromisión del Poder Legislativo en nuestro poder de reglamentar la profesión y simplemente denegamos la admisión solicitada. En un caso posterior, López Santiago, Ex Parte,[97] reiteramos esta norma y negamos la admisión a una abogada que se amparó en la misma disposición legislativa.

En el contexto de las sanciones disciplinarias, en In re Abella[98] ordenamos el desaforo de un abogado, a pesar de que, según su alegación, dicha sanción no estaba

---

[96] Ex parte Boneta, *supra*.
[97] López Santiago, Ex Parte, *supra.*
[98] In re Abella, *supra*.

contemplada en la Ley de 11 de marzo de 1909.[99] Reiteramos la norma pautada en In re Tormes,[100] a los efectos de que un abogado podía ser disciplinado por causas no contenidas en esa ley, pues el poder de reglamentación sobre la abogacía le permite a este Tribunal disciplinar por los motivos que considere apropiados. En estos casos, impusimos las sanciones disciplinarias que consideramos adecuadas, al amparo de nuestro poder inherente de reglamentar la profesión, sin sentirnos atados a la legislación ni entrar en consideraciones sobre su constitucionalidad. Sencillamente, concluimos que la legislación no nos obligaba. No rechazamos la legislación complementaria sobre la reglamentación de la profesión ni decretamos su inconstitucionalidad. Por lo tanto, no es correcto aseverar que el Tribunal anuló la legislación directiva sobre la admisión a la profesión legal, mucho menos podemos considerar que la declaró inconstitucional por violar el principio de separación de poderes.[101]

En los casos reseñados, nuestras decisiones, si bien se han fundamentado en nuestro poder inherente, no han considerado que la actuación legislativa constituye una usurpación de dicho poder. En ambos casos, las controversias exigían, simplemente, resolver si se permitía la admisión de ciertas personas a la profesión o si se impondrían sanciones a abogados en asuntos disciplinarios

---

[99] 4 LPRA sec. 735.
[100] In re Tormes, supra.
[101] Esto es contrario a lo que asevera el Juez Asociado Rivera García en su Opinión de conformidad. Opinión de conformidad del Juez Asociado Rivera García, pág. 7.

no cubiertos por ley. Los peticionarios en los casos de admisión y los querellados en los casos de las sanciones disciplinarias no alegaron que la medida legislativa en la que se amparaban usurpaba el poder inherente de este Tribunal. Por el contrario, en todos los casos fue el Tribunal quien *motu proprio* pasó a considerar la relación entre la función legislativa y sus facultades al amparo de ese poder.

En Schneider (I), por primera vez una parte querellada recurrió al poder inherente del Tribunal para sustentar su posición. En ese caso, el Colegio se querelló contra varios abogados que no habían pagado su cuota. Los querellados plantearon que la Asamblea Legislativa no podía establecer requisitos para la práctica de la profesión porque dicha facultad era exclusiva del Tribunal Supremo.[102] Al resolver que el planteamiento de los querellados era improcedente, expresamos:

> Es inmeritorio el argumento de los querellados de que la Asamblea Legislativa de Puerto Rico carece de poder para ordenar, como hizo en 1932, la integración de nuestro foro. Es cierto, según hemos señalado repetidas veces, que la admisión al ejercicio de la abogacía es función inherente de este Tribunal y que la legislación aprobada sobre esta materia, tal como la Ley Núm. 43, 'es puramente directiva, no mandatoria para esta Corte'. La preeminencia de la acción judicial en este campo, el cual incluye naturalmente la facultad de pasar juicio sobre si debe unificarse o no el foro en una jurisdicción

---

[102] Además, argumentaron que no se les debía obligar a pertenecer al Colegio y que la exigencia de una cuota violaba su libertad de expresión y asociación. Finalmente, señalaron que las cuotas se utilizaban para propósitos ajenos a las responsabilidades del Colegio. Schneider (I), *supra*.

> y bajo qué condiciones, no significa que la legislación sobre estos particulares que no conflija con las pautas que este Tribunal establezca sea *nula*.[103]

En otras palabras, contrario a lo que alegaron los demandados, la legislación que exigía que los miembros de la clase togada fueran miembros del Colegio no infringía el poder inherente de este Tribunal para reglamentar la profesión. Esa legislación se había aceptado en nuestra jurisdicción como complementaria a ese poder. No podía ser de otra manera, ya que, desde 1838, el Colegio había desempeñado un rol fundamental en el desarrollo de la profesión jurídica puertorriqueña. Por tanto, el requisito de pertenecer a esa institución servía a los mejores intereses de este Foro, de los miembros de la clase togada y de la ciudadanía en general.

A pesar de la decisión del Tribunal en Schneider (I), la colegiación obligatoria fue objeto de múltiples pleitos subsiguientes, tanto a nivel estatal como federal. En todos, se confirmó la validez de este dictamen. Además, como discutiremos más adelante, la jurisprudencia estatal y federal validó la colegiación ante reclamos de que ésta vulneraba el derecho de los abogados a la libre asociación.

El asunto pareció estar resuelto hasta que, en el 2009, la Asamblea Legislativa aprobó dos proyectos que se convirtieron en las Leyes de Descolegiación. Ambas leyes eliminaron el carácter obligatorio de la colegiación como requisito para ejercer la profesión legal en Puerto Rico y

---

[103] Schneider (I), *supra* (énfasis suplido).

privaron al Colegio de las competencias disciplinarias que por más de siete décadas había ejercido en conjunto con este Tribunal.[104] Legislación posterior también eliminó la participación del Colegio en las evaluaciones de nombramientos judiciales y limitó la facultad de éste para expresarse sobre asuntos religiosos y políticos.[105]

El Colegio impugnó ambas leyes en un recurso que invocó la jurisdicción original de este Tribunal y que fue denegado. Cuando finalmente llegó la controversia a nuestra consideración en el 2011, se denegó el auto de *certiorari* presentado por el Colegio. En esa ocasión, se rechazó el planteamiento de que tanto la Ley Núm. 43 de 14 de mayo de 1932, que estableció la colegiación obligatoria, como las Leyes de Descolegiación, usurparon el "poder de este Tribunal para reglamentar la profesión".[106] Por el contrario, este Tribunal afirmó que

> [Las leyes 121 y 135 de 2009] no son otra cosa que el ejercicio por la Asamblea Legislativa de su facultad para regular la estructura y funcionamiento del Colegio de Abogados, las mismas facultades que la Asamblea Legislativa empleó al crear el Colegio mediante la Ley Núm. 43 de 14 de mayo de 1932. Fue esa ley de 1932, y no este Tribunal, la que creó el Colegio de Abogados e hizo compulsoria su membresía.

---

[104] Nos indica el profesor Figueroa Prieto que "el propósito más evidente de la legislación de 2009 fue, no sólo eliminar la colegiación compulsoria y la participación del Colegio de Abogados en los asuntos relacionados con la disciplina de los abogados, sino castigar al Colegio de Abogados, silenciar su voz y cercenar [sus] finanzas". G. Figueroa Prieto, Propuesta para la reglamentación de la conducta profesional en Puerto Rico, 81 Rev. Jur. UPR 1, 14 (2012). (En adelante, G. Figueroa Prieto, Propuesta para la reglamentación).
[105] Véase, entre otras, In re: Enmdas. Ley Col. Abogados, 177 DPR 819 (2010). Véanse, además, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2021; Ley Núm. 108-2010, 4 LPRA sec. 74; Ley Núm. 158-2011.
[106] Resolución de 17 de marzo de 2011, Colegio de Abogados v. E.L.A., 181 DPR 135, 136 (2011) (citas suprimidas).

> **Ninguna de esas leyes usurpó el poder de este Tribunal para reglamentar la profesión de la abogacía en Puerto Rico.** Tampoco conflige con lo que hemos pautado al respecto. La variación de la colegiación—de obligatoria a voluntaria—no elimina el Colegio, no contradice ninguna pauta establecida en el ejercicio de nuestro rol como ente que reglamenta la profesión legal ni soslaya el axioma de la separación de poderes, base de nuestro sistema republicano de gobierno.[107]

La Resolución no explicó por qué la colegiación obligatoria ya no se consideraba necesaria y complementaria al poder inherente del Tribunal para regular la profesión, como habíamos resuelto en Schneider (I).[108] Tampoco se consideraron las funciones que el Colegio realizaba en bien de la justicia y para el mejoramiento de la profesión. Entre las funciones importantes del Colegio, el profesor Figueroa Prieto resalta las siguientes: (1) ofrecer un programa pro bono para coordinar la representación legal a indigentes y garantizar el acceso a la justicia para los sectores marginados; (2) cooperar en las evaluaciones de candidatos a puestos judiciales; (3) comentar proyectos de ley y sus implicaciones en nuestro ordenamiento; (4) promover actividades culturales y artísticas; (5) ofrecer orientación legal gratuita a la ciudadanía; (6) proveer voluntarios para servir como observadores en actividades en las cuales los ciudadanos ejercen el derecho de libertad de expresión; (7) administrar eficientemente un fondo para

---

[107] Íd. (citas suprimidas)(énfasis suplido).
[108] "…tendría que explicarse el por qué, si el Tribunal Supremo había decidido en la litigación de Schneider que la colegiación compulsoria era lo mejor y lo más conveniente para nuestra jurisdicción, ahora de repente había dejado de serlo". G. Figueroa Prieto, Propuesta para la reglamentación, *supra*, pág. 18.

facilitar la prestación de la fianza notarial; y, finalmente, (8) asistir a este Tribunal en el ejercicio de su poder disciplinario sobre la clase togada. La Opinión que provoca nuestro disenso no discute ninguna de estas funciones, ni su importancia para la profesión jurídica del País.

Nuestras decisiones en los casos recientes sobre la colegiación obligatoria, en los que específicamente se ha planteado que la Asamblea Legislativa ha usurpado nuestro poder inherente de reglamentar la abogacía, han demostrado que este Tribunal es inaceptablemente inconsistente en el ejercicio de ese poder. En Schneider (I) se estableció que la determinación de integrar el Foro nos correspondía en virtud de nuestro poder inherente, y que la colegiación obligatoria servía a los mejores intereses de nuestra sociedad. Sin embargo, cuando el Colegio impugnó las Leyes de Descolegiación de 2009, una mayoría de este Tribunal se negó a atender dos recursos distintos que aducían, justamente, que las acciones legislativas contravenían esa norma. En ese momento, la mayoría parecía conforme con rendir nuestro poder inherente de reglamentar la profesión, que abarca la determinación respecto a la conveniencia de un gremio unificado. Ahora, se emite una Opinión que hace todo lo contrario. Esta inconsistencia es muy preocupante pues se presta a críticas de arbitrariedad en el ejercicio del poder inherente de reglamentar la profesión jurídica.

B

Con el beneficio de la trama histórica, social y política de la colegiación obligatoria en Puerto Rico, nos resulta desconcertante la disposición, facilidad y celeridad con que la mayoría de este Tribunal decidió atender el caso que nos ocupa. Más aun, nos parece sumamente contradictorio el hecho de que, para disponer de las controversias planteadas, la mayoría se ampare precisamente en el poder inherente que hace tan sólo tres años se negó a ejercer.

Para sustentar su determinación de que la colegiación obligatoria infringe tal poder, la Opinión mayoritaria ofrece una explicación escueta basada en su apreciación de que la profesión legal ha funcionado adecuadamente desde que se eliminó la colegiación obligatoria. Propone que esto se debe a que "la Rama Judicial ha seguido funcionando eficientemente"[109] en la reglamentación ética de la conducta de los abogados y abogadas, sin la ayuda del Colegio. Explica, también sucintamente, que no se ha probado que haya una merma en la calidad de los servicios profesionales ni falta de atención a los procedimientos disciplinarios. Luego de estas generalidades, algunas de ellas especulativas y sin fundamento, la Opinión mayoritaria critica el hecho de que el Estado no demostró una deficiencia en el funcionamiento de la profesión durante los años de descolegiación. De esta forma, se le exige al Estado que justifique la conveniencia de adoptar la

---

[109] Opinión mayoritaria, en la pág. 35.

colegiación obligatoria, a pesar de que el procedimiento de certificación escogido por la mayoría, incluyendo el rechazo al nombramiento de un Comisionado, no le dio la oportunidad de probar absolutamente nada.

La mayoría determina que no hay base suficiente para avalar la integración del Foro en nuestra jurisdicción, conforme a la experiencia de los últimos cinco años en los que la colegiación ha sido voluntaria. Cabe preguntarse entonces: ¿Cómo se justifica concluir que la experiencia de cinco años es suficiente para afirmar que podemos prescindir de la colegiación obligatoria? ¿Cómo, entonces, no fue suficiente la experiencia de setenta y siete años durante los cuales imperó en nuestro ordenamiento la colegiación obligatoria para llamar la atención de una mayoría de este Tribunal cuando ésta fue descartada por la Legislatura?

La postura mayoritaria, además de ser inherentemente injusta, es totalmente ilógica. La realidad es que, para salvaguardar la legitimidad del ejercicio de nuestro poder inherente, el Tribunal es quien debe exponer las razones por las que rechaza la legislación sugerida. El ejercicio de nuestro poder inherente no puede estar sujeto tan sólo a los criterios particulares de los miembros de este Foro. Más bien, es imperativo que ejerzamos ese poder de una manera razonable y consistente, que propenda a la estabilidad de la profesión. Además, debemos reconocer que el concepto "inherente" no significa, sin más, la cualidad

de "exclusivo".[110] Es decir, la naturaleza "inherente" del poder de este Tribunal para regular la profesión no está reñida con algún grado de participación de la Legislatura. Ésa ha sido la doctrina durante muchos años, en Puerto Rico y en otras jurisdicciones. Precisamente, algunas de las jurisdicciones de Estados Unidos han seguido el modelo de unificar sus foros mediante la participación legislativa. En trece de ellas, la colegiación obligatoria fue lograda con alguna participación de la Legislatura. En siete de estas, la colegiación obligatoria fue un esfuerzo conjunto entre el Tribunal y la Legislatura.[111] Sabemos que cualquier legislación sobre requisitos de admisión al ejercicio de la profesión tiene tan sólo fuerza directiva, pero eso no significa que debamos rechazar las medidas complementarias de la Rama Legislativa de nuestro gobierno sin un análisis cuidadoso y fundamentado con prueba que justifique nuestra determinación.

El poder inherente del Tribunal Supremo se da en función de la independencia judicial, pero opera en el contexto de un gobierno que se rige por la separación de poderes y el balance entre éstos. Por eso, no es, ni puede ser, un poder absoluto. Por el contrario, como todo poder,

---

[110] Inherente, según el diccionario de la Real Academia Española proviene del latín "inhaerens, -entis, part. act. de inhaerēre, estar unido" y se define como aquello "que por su naturaleza está de tal manera unido a algo, que no se puede separar de ello". Real Academia Española, Diccionario de la lengua española, 22da ed., versión electrónica, (http://www.rae.es). En González v. Tribunal Superior y Pueblo, Interventor, supra, se explicó que, según el profesor Henry Rottschaefer, el concepto "inherente" sólo significa ser incluido o que necesariamente pertenece a algo.
[111] The Strategic Planning Committee of the State Bar of Wisconsin, Future of the State Bar Bar: Mandatory/Voluntary Membership Report, February, 2010.

está sujeto a perder su legitimidad si se ejerce injustificadamente y de manera arbitraria. Así lo ha reconocido el Tribunal Supremo de Estados Unidos al delimitar los contornos de los poderes inherentes de las cortes federales: "el alcance de estos poderes debe ser delimitado cuidadosamente, pues cuando una Rama de Gobierno emprende la tarea de definir su propia autoridad, sin el beneficio de cooperación o escrutinio de las demás, existe el peligro de extralimitarse".[112]

Para revocar décadas de jurisprudencia y alterar el balance entre el Poder Legislativo y el Judicial en la regulación de la profesión legal, era imprescindible recibir prueba que nos permitiera hacer un balance de los intereses de las partes y del beneficio que el Pueblo de Puerto Rico pudiera derivar de un foro integrado. Ello, a su vez, nos requería examinar con mayor cuidado la utilidad que representa el Colegio para la sana administración de la justicia.

Una vez contáramos con esa prueba, si al entender de la mayoría del Tribunal quedaba demostrado el beneficio de la descolegiación, era imperativo justificar claramente las razones para rechazar, al amparo de nuestro poder inherente, la legislación que promueve un foro integrado. Era igualmente imperativo explicar las razones por las

---

[112] Degen v. United States, 517 US 820, 823 (1996)(traducción nuestra)("The extent of these [inherent] powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority").

cuales las siguientes expresiones del Juez Asociado Negrón

García en Schneider (I) perdieron validez:

> la asociación compelida y la reglamentación de la profesión de abogados está inexorablemente atada a esa eficaz gestión por la justicia. No es posible entonces divorciar una de la otra; el sistema judicial integrado es la médula de la dinámica operacional constitucional y también va de la mano con el régimen unificado de colegiación compulsoria. Forma parte y es congruente con ese mandato y diseño parlamentario de mayor trascendencia que necesariamente ha de ceder al concepto, también importante, de una libertad incondicionada de asociación.[113]

En ausencia de esa prueba, no es suficiente la conclusión generalizada de que la reglamentación de la profesión legal no se ha visto afectada por la ausencia de un sistema de colegiación obligatoria en los pasados cinco años. Esa afirmación sin base fáctica no es fundamento suficiente para resolver que la Asamblea Legislativa de Puerto Rico intervino inconstitucionalmente con nuestro poder inherente de reglamentar la profesión. No es lo mismo utilizar nuestro poder inherente para rechazar una ley directiva en materia de reglamentación profesional que declararla inconstitucional. Tampoco es suficiente aseverar que el Estado falló en probar la necesidad de la colegiación obligatoria para rechazar dicha ley directiva. Al ejercer nuestro poder inherente, la mayoría de este Tribunal tenía el deber de apoyar su conclusión en

---

[113] Schneider (I), *supra*, pág. 558 (opinión concurrente del Juez Asociado señor Negrón García).

determinaciones sustentadas en el expediente que fueran suficientes para alterar el ordenamiento jurídico vigente.

El procedimiento escogido por la mayoría no permitió contar con prueba para concluir que la administración de la justicia no se ha visto afectada por el cambio de colegiación obligatoria a voluntaria. Para empezar, la manera en que la Opinión mayoritaria caracteriza el buen funcionamiento de la justicia es preocupante. El que este Tribunal atienda numerosas quejas disciplinarias contra abogados no puede ser el criterio para medir el acceso a la justicia ni tantos otros factores relacionados a la práctica legal. Tampoco podemos afirmar que hay tal buen funcionamiento porque "el sistema de justicia no se ha quebrantado".[114]

Por otra parte, es importante destacar que la mayoría sólo declara inconstitucionales los Artículos 5, 6 y 11 de la Ley de Colegiación Obligatoria, sin siquiera citarlos. De esta forma, la Opinión mayoritaria deja vigente toda una serie de disposiciones relacionadas con el ámbito disciplinario de la profesión. Por ejemplo, el Artículo 3(o) de la Ley faculta al Colegio a "[r]ecibir e investigar las quejas que se formulen respecto a la conducta de los abogados integrantes del Colegio en el ejercicio de la profesión, para lo cual ejercitará los poderes y prerrogativas que le confiere esta Ley".[115] De igual forma,

---

[114] Opinión mayoritaria, en la pág. 33.
[115] Ley de Colegiación Obligatoria, Art. 3(o).

el Artículo 4 dispone todo un procedimiento para atender las quejas que reciba la Comisión de Ética del Colegio.[116]

Más allá de esta inconsistencia, la decisión de rechazar la colegiación obligatoria es una decisión de política pública sobre la Rama Judicial. Por lo tanto, la responsabilidad de justificar el rechazo de legislación directiva recae sobre esta Rama, como se ha establecido históricamente mediante el rechazo de legislación que incide sobre nuestro poder inherente. Por eso resulta preocupante que la mayoría entienda que los beneficios que se derivan de la colegiación obligatoria no contribuyen a la sana administración de la justicia, a la vez que mantiene vigentes las facultades disciplinarias del Colegio.

Por último, resaltamos el error de declarar una ley inconstitucional por el sólo hecho de que interfiere con el ejercicio de nuestro poder inherente. Como indicamos, de ser ese el caso, lo correcto en derecho, y lo que va acorde con las restricciones que nos impone la autolimitación judicial, sería rechazar la ley. Pero la Opinión mayoritaria va más allá. No sólo declara inconstitucionales los Artículos 5, 6 y 11 de la Ley de Colegiación

---

[116] Íd., Art. 4.
En el ejercicio de su facultad para recibir e investigar las quejas que se formulen respecto a la conducta profesional de los abogados, la Comisión de Ética u organismo designado por el Colegio gozará de las facultades necesarias para cumplir a cabalidad con los deberes y funciones aquí dispuestas. Adoptará un reglamento para poner en vigor estas disposiciones, estableciendo normas que garanticen el debido proceso de ley, que agilicen los procedimientos y propicien un proceso justo e imparcial para las partes involucradas. Entre las prerrogativas que tendrá dicho organismo, se incluyen: celebrar vistas, tomar juramentos, recibir declaraciones juradas, ordenar la producción de evidencia documental o electrónica, citar a testigos o peritos, hacer referidos a foros de mediación de conflictos.

Obligatoria al amparo de nuestro poder inherente, sino que también parece indicar que el ejercicio del poder inherente le permite a este Tribunal determinar la constitucionalidad de una ley por entender que vulnera el derecho de asociación de los abogados y abogadas de Puerto Rico.[117] Esta incongruencia conceptual y metodológica, más que llamarnos la atención, nos causa desasosiego. Contrario a lo que afirma la mayoría, la determinación respecto a la constitucionalidad de la Ley de Colegiación Obligatoria en cuanto al derecho a la libertad de asociación no es un "elemento importante al momento de ejercer [el] Poder Inherente para regular la profesión legal".[118] El poder que ejerció la mayoría no fue el poder inherente para reglamentar la profesión, sino el poder de revisión judicial para entrar a considerar indebidamente el derecho a la libertad de asociación en su vertiente negativa.

V.

Esta inconsistente y ambigua argumentación jurídica nos obliga a exponer la normativa pertinente al derecho a la libre asociación en su vertiente negativa. Ello nos permitirá evaluar si existían fundamentos jurídicos o circunstancias excepcionales que justificaran abandonar el efecto vinculante que la norma que establecimos en Schneider (I)[119] tuvo por décadas.

---

[117] En primera instancia, la Opinión mayoritaria rechaza los Artículos 5, 6 y 11. Véase, pág. 32 de la Ponencia. Sin embargo, posteriormente y en ejercicio de su poder inherente los declara inconstitucionales. Véase, págs. 39 y 40.

[118] Opinión mayoritaria, pág. 20.

[119] Schneider (I), *supra*.

A

Nuestra Constitución establece que "las personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares".[120] Esta protección constitucional fue articulada, evidentemente, en términos positivos. Sin embargo, se ha reconocido una vertiente negativa de este derecho, por lo que, también se ha tutelado constitucionalmente el derecho de las personas a no asociarse.[121] Respecto a ambas vertientes, es doctrina

---

[120] Art. II, Sec. 6, Const. ELA, LPRA, Tomo 1. La incorporación de esta disposición a nuestra Carta de Derechos responde a la propuesta de la Escuela de Administración Pública de la Universidad de Puerto Rico. Escuela de Administración Pública de la Universidad de Puerto Rico, La nueva Constitución de Puerto Rico (ed. facsimilar, 2005), págs. 224-25. La misma no generó mayores debates. Así, el insigne jurista, José Trías Monge explica que las minorías no incluyeron propuestas particulares sobre este derecho. Véase J. Trías Monge, Historia Constitucional de Puerto Rico, Vol. III, pág. 186 (1984). Como muy bien reconoce la Opinión mayoritaria y el Voto de Conformidad del Juez Asociado señor Martínez Torres, es verdad irrebatible que la articulación textual de ese derecho se inspiró en el primer inciso del vigésimo artículo de la Declaración Universal de Derechos Humanos. [cita del Art. 20 (1) de la Declaración Universal de Derechos Humanos ("Toda persona tiene derecho a la libertad de reunión y de asociación pacíficas")]. Sin embargo, es igualmente cierto que la incorporación textual del derecho en cuestión no incorporó la vertiente negativa del mismo, la cual sí fue explicitada en el segundo inciso del segundo artículo de la Declaración Universal de Derechos Humanos ("Nadie podrá ser obligado a pertenecer a una asociación"). Ello pudiera significar — sin que se interprete que favorecemos esta interpretación — que la intención de nuestros constituyentes no fue robustecer la vertiente negativa del derecho a la libre asociación, en la medida en que, pudiendo hacerlo, optaron por sólo incorporar su acepción positiva. Por tanto, resulta preocupante que la mayoría de este Tribunal — especialmente el Juez Asociado señor Martínez Torres - obvie la importancia de dicho proceder; máxime cuando en el pasado han suscrito un estricto análisis originalista al interpretar ciertas protecciones constitucionales A.A.R., Ex parte, 187 DPR 835 (2013). De igual forma, habría que señalar que la mención de la Declaración Universal de Derechos Humanos, aunque oportuna en el caso y contexto que nos ocupa, es un tanto sorprendente, puesto que en otras ocasiones en que se han invocado derechos constitucionales que, de una forma u otra, provienen de dicho instrumento de Derecho Internacional Público - por ejemplo, el principio de la inviolabilidad de la dignidad humana o el discrimen por sexo -,la mayoría que hoy suscribe la Opinión de este Tribunal ha hecho caso omiso al mismo. A.A.R., Ex parte, supra.
[121] Schneider (I), supra, pág. 549 ("El derecho a la no asociación, derivable del derecho contrario consagrado en la Constitución del Estado Libre Asociado, Art. II. sec. 6, cede ante los intereses

firmemente establecida en nuestra jurisdicción que el derecho a la libre asociación no es absoluto.[122]

El derecho a la libre asociación no se encuentra expresamente reconocido en la Constitución de Estados Unidos. Más bien, se le considera un corolario del derecho a la libertad de expresión, tutelado por la Primera Enmienda y aplicable a los estados a través de la Decimocuarta Enmienda.[123] La incorporación jurisprudencial del derecho a la libre asociación en el Derecho Constitucional federal también ha reconocido una vertiente positiva[124] y negativa[125] del mismo. Ninguna de éstas configura un derecho absoluto.

Al no ser un derecho absoluto, la libertad de asociación, al igual que el derecho a no asociarse, puede ceder en determinadas circunstancias ante intereses de mayor jerarquía o ante situaciones que revistan un alto interés público. En lo que atañe a la vertiente negativa del derecho a la libre asociación, que es la que nos ocupa, entendemos que Schneider (I) calibra adecuadamente los intereses en pugna, consideradas las particularidades de la

---

señalados, de naturaleza claramente imperiosa bajo la constitución puertorriqueña".).

[122] Democratic Party v. Tribunal Electoral, 107 DPR 1, 25 (1978) ("Ni el derecho de asociación ni el de participar en actividades políticas es absoluto en ningún caso" (*citando a* Civil Service Commission v. Letter Carriers, 413 US 548, 567 (1973)).

[123] NAACP v. Alabama ex rel. Patterson, 357 US 449, 460-61 (1958). *Véase, también,* Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law. Substance and Procedure* (5th ed., 2013), Vol. 5, págs. 403-04, sec. 20.41(a); Raúl Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico* (1988), Vol. II, pág. 1496.

[124] *Alabama ex rel. Patterson, supra.*

[125] Abood v. Detroit Bd. of Education, 431 US 209 (1977). Véase*, también,* Lathrop v. Donohue, 367 US 820 (1961).

incorporación de este derecho en nuestro ordenamiento constitucional.

                                    B

    En Schneider (I), este Tribunal, aplicando un *balance de intereses*, determinó que:

> Los intereses públicos en la creación de una sociedad vigorosamente pluralista, en el mejoramiento de la abogacía y en la buena marcha del sistema judicial pesan decididamente más que las inconveniencias personales que pueda acarrear en ciertos casos la colegiación obligatoria. El derecho a la no asociación derivable del derecho contrario consagrado en la Constitución del Estado Libre Asociado, Art. II, Sec. 6, cede ante los intereses señalados, de naturaleza claramente imperiosa bajo la constitución puertorriqueña.[126]

    Al utilizar el análisis de balance de intereses, el Tribunal evaluó en detalle la cuantiosa prueba presentada por las partes. Además, tomó en consideración la pluralidad de los intereses en pugna. Por un lado, evaluó el interés personal de los abogados y las abogadas disidentes respecto a las posturas ideológicas o institucionales del Colegio y el posible menoscabo a su derecho a la libertad de asociación y expresión. Por el otro, tomó en consideración el interés del Estado y del propio Tribunal en unificar la profesión legal del País, para el mejoramiento de la clase togada y el fortalecimiento de la administración de la justicia. Consiguientemente, evaluó el rol del Colegio no sólo en lo relacionado con sus competencias disciplinarias, sino también en atención a la multiplicidad de servicios

---

[126] Schneider (I), *supra*, pág. 549.

que provee, tanto a la profesión legal como a la comunidad en general.[127]

Los argumentos de la Opinión mayoritaria para rechazar el análisis de Schneider (I) y declarar que el esquema de la colegiación obligatoria es inconstitucional no son convincentes. Los peticionarios no nos han puesto en posición de poder reevaluar la norma establecida en Schneider (I). Más aún, dado el desatinado trámite procesal de este caso, no contamos con un expediente completo que nos permita hacer una determinación sobre la idoneidad de la colegiación obligatoria. Por tanto, el balance de intereses efectuado por este Tribunal en Schneider (I), en el contexto de la clase togada y sus particularidades gremiales, nos parece que constituye el método adecuado para atender posibles vulneraciones al derecho a la libre asociación en su vertiente negativa. Este resulta un análisis particularmente apropiado cuando el Estado regula profesiones que están revestidas de alto interés público.

Hoy, al igual que en 1982, es innegable que la regulación diligente y efectiva de la profesión de la abogacía incide de manera trascendental en la sana administración de la justicia. Los abogados y las abogadas

---

[127] Schneider (I), sin embargo, se limita a evaluar lo atinente a la libertad de asociación. No obstante, poco después, en Colegio de Abogados v. Schneider (II), 117 DPR 504 (1986) (En adelante, "Schneider (II)"), este Tribunal atendió el asunto relativo a la libertad de asociación de los abogados y las abogadas disidentes. Para ello, confeccionó un complejo remedio que permitía que éstos objetaran oportunamente el uso de sus cuotas y, por tanto, que no se les vulnerara su derecho a la libertad de expresión al compelerlos a apoyar posturas adversas a sus ideas o concepciones personales. Véase Schneider (II), supra, págs. 522-529. Schneider (II), supra, págs. 513-515.

no son sólo funcionarios de la Rama Judicial; el Estado Libre Asociado de Puerto Rico delega en ellos ciertas funciones, como la fe pública notarial, que son esenciales en nuestra jurisdicción. Quienes ejercen la profesión jurídica, como custodios de conocimiento y destrezas especializadas, tienen la responsabilidad de velar porque el resto de la ciudadanía tenga un verdadero acceso a la justicia que se imparte en nuestros tribunales.

Disgregar la profesión legal sólo contribuye a eliminar un espacio vital y unitario para que la profesión, *toda*, pueda discutir los asuntos que eminentemente le atañen. No se debe perder de vista que:

> El Colegio [de Abogados y Abogadas] es una entidad democrática. Su Presidente, su Junta de Gobierno y las directivas de las Delegaciones son electos en asambleas que garantizan a todos los colegiados la participación, libre expresión y el derecho a presentar y debatir resoluciones. En la asamblea anual se aprueba el presupuesto de la institución. *La vida institucional propicia la participación abierta y la tolerancia.*[128]

La solución correcta no es prescindir de lo que ha sido buen derecho durante la mayor parte de la historia de nuestra profesión para propiciar la desunión de la clase profesional y destruir espacios de discusión. Por el contrario, lo conveniente sería utilizar nuestro poder inherente para propiciar la existencia de un espacio de discusión y debate inclusivo, representativo y democrático, en el cual la comunidad legal, en un marco de respeto, pueda armonizar sus diferencias para beneficio del Derecho

---

[128] Schneider (II), *supra*, pág. 514 (énfasis suplido).

Puertorriqueño. Cabe recordar, además, que el asunto que nos compete es la colegiación obligatoria, *no exclusiva*. Es decir, los abogados y las abogadas que disientan de las posturas que asuma el Colegio tendrían diversos medios para salvaguardar y evitar cualquier vulneración a su derecho a la libre expresión.

VI

En fin, disentimos de lo resuelto en la Opinión mayoritaria por múltiples razones. Insistimos en que, al abusar del recurso de certificación intrajurisdiccional, se impidió el desarrollo de un expediente adecuado para poder evaluar los dos asuntos medulares ante nuestra consideración: (1) si la colegiación obligatoria complementa nuestra facultad de reglamentar la profesión de la abogacía, para determinar sensatamente si aceptábamos o rechazábamos la Ley de Colegiación Obligatoria en virtud de nuestro poder inherente; y (2) si la Ley de Colegiación Obligatoria era constitucional a la luz de los derechos constitucionales invocados por los demandantes.

También discrepamos del errado proceder mayoritario de declarar inconstitucional la Ley de Colegiación Obligatoria tan sólo por ser, según su criterio, innecesaria para la regulación de la profesión de la abogacía y la administración de la justicia.

Reiteramos, además, que la Opinión mayoritaria no debió pronunciarse sobre el derecho constitucional a la libre asociación. Varias de las restricciones de la doctrina de autolimitación judicial así lo exigían. En vez,

la Opinión mayoritaria utiliza un análisis especulativo sobre presupuestos hipotéticos, para alterar la normativa constitucional aplicable al derecho de los abogados y las abogadas del País a la libre asociación, en su vertiente negativa. No articula razones legítimas para ello.

Como si fuera poco, la mayoría revocó, sin más, "aquellas partes de *Colegio de Abogados de Puerto Rico v. Schneider, supra,* que sean incompatibles con los pronunciamientos que anteceden". Esto, sin especificar las razones para apartarse de la norma y sin considerar las salvaguardas pautadas en Schneider (I) y (II). Como indicamos, este proceder desatinado disloca la estabilidad que provee el precedente en nuestro ordenamiento jurídico.[129] Reconocemos que, en nuestro sistema, los precedentes no están escritos en piedra y que en ciertos momentos puede convenir reevaluar un precedente para adecuar nuestro estado de derecho a los cambios o necesidades de una sociedad democrática y pluralista. Ahora bien, ese ejercicio debe anclarse en un análisis jurídico responsable, sosegado y, sobre todo, capaz de demostrarle a la ciudadanía las razones que ameritan trastocar la norma

---

[129] Cabría tomar en cuenta las expresiones del Tribunal Supremo de Estados Unidos sobre este particular:

But whatever the premises of opposition may be, only the most convincing justification under accepted standards of precedent could suffice to demonstrate that a later decision overruling the first was anything but a surrender to political pressure, and an unjustified repudiation of the principle on which the Court staked its authority in the first instance. So to overrule under fire in the absence of the most compelling reason to reexamine a watershed decision would subvert the Court's legitimacy beyond any serious question. Planned Parenthood of Se. Pennsylvania v. Casey, 505 US 833, 867 (1992).

jurídica existente. Así se lograría lo que propone el profesor Hiram Meléndez Juarbe:

> El ciudadano no le exige al juez que renuncie a su humanidad y se ajuste a un ideal de objetividad en última instancia inasequible. Sólo le exige que resuelva controversias sobre la base de justificaciones razonables y a las que no podamos atribuirle arbitrariedad, capricho, amiguismo, o que tengan su razón de ser en la afiliación política, religiosa o meramente ideológica. El ciudadano exige que ese productor del derecho que llamamos juez hable con una palabra que esté respaldada por el derecho y sus razones. Sólo le pide que demuestre la disposición de convencer a una población, diversa y heterogénea, de que sus opiniones son defendibles y que han tomado en consideración un amplio universo de posibilidades. Sólo así el Juez y el ciudadano podrán decir que las posturas descartadas (y por ende aquellos que las sostienen) han sido tratadas con respeto y dignidad.[130]

Recalcamos que la certificación intrajurisdiccional tan apresurada impidió recibir la prueba necesaria para atender las controversias que presenta este caso. El expediente incompleto de este caso nos impedía descartar los beneficios y ventajas que el foro integrado tuvo en nuestra jurisdicción por casi un siglo. Después de todo, el ejercicio decisional, como cualquier enunciado lógico, debe partir de las premisas generales que proveen las normas. Sin embargo, requiere determinaciones de hechos para poder llegar a la decisión individualizada.[131] Los hechos son el

---

[130] H. Meléndez Juarbe, Un Tribunal a la defensiva, en Derecho al Derecho: Intersticios y grietas del poder judicial (2012).

[131] "Los enunciados generales de deber jurídico (normas o principios) constituyen la premisa mayor, la descripción de los hechos acaecidos constituyen la premisa menor y el contenido de la decisión individual del juez configura la conclusión". Íd. págs. 230-231.

puente necesario entre los márgenes de la ribera. Sin ellos sólo puede darse un salto al vacío.

Por todo lo anterior, disentimos.


Liana Fiol Matta
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lcdo. Thomas Rivera Schatz

    Peticionario


       v.                      CT-2014-008


Estado Libre Asociado de Puer
Rico, por conducto
Secretario de Justicia, H
César Miranda; Colegio
Abogados de Puerto Rico,
conducto de su presiden
Lcda. Ana Irma Rivera Lassén

    Recurridos

----------------------------

                      Cons.    Certificación

Asociación de Abogados
Puerto Rico; Héctor R. Ra
Díaz; Rafael Sánchez Hernánd

    Peticionarios


        v.


Colegio de Abogados y Aboga    CT-2014-009
de Puerto Rico; Estado Li
Asociado de Puerto Rico

    Recurridos

Carlos Rivera Justinia
Carlos Pérez Toro, Juan M. G
Pacheco, Félix Colón Serra
María Fullana Hernánd
Carmelo Ríos Santiago, Mig
Romero Lugo, Mario Santu
González, Carlos Sagar
Abreu, Luis Dávila Colón, J
Meléndez Ortiz, Vale
Rodríguez Erazo y El
Sánchez Sifonte

Interventores

----------------------------

John E. Mudd y John A. Stewa

Peticionarios

v.

Alejandro    García    Padil
Estado Libre Asociado de Pue
Rico;  Colegio  de  Abogados
Puerto Rico

Recurridos

Evelyn Aimée De Jesús Rodrígu

Interventora

Cons.

CT-2014-010

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 16 de octubre de 2014.

Ante el patente acto inconstitucional de la Asamblea Legislativa, este Tribunal debió anclar exclusivamente su decisión en una realidad constitucional sencilla: es el Poder Judicial el que tiene la facultad para regular o no cualquier variante de la colegiación de los abogados y abogadas, y tal función es judicial y no legislativa. Ante la adecuada adjudicación de esa prominente controversia, correspondía decretar la inconstitucionalidad de su faz de la **totalidad** de la Ley Núm. 109-2014, *infra*.

En consecuencia, no procedía dejar vigentes articulados de la referida ley, como erróneamente dictaminó la mayoría de este Tribunal, cuando es evidente que éstos inciden directamente con nuestro Poder Judicial y por ser una materia ajena a la función legislativa. Asimismo, resultaba innecesario embarcarse en atender otras controversias adicionales, basadas en derechos individuales, pues la respuesta diáfana estaba anclada en la independencia judicial.

I

El poder inherente que tiene este Tribunal para regular el quehacer de los abogados y abogadas, que son admitidos al ejercicio de la profesión jurídica en Puerto Rico, es reconocido y profesado por esta Curia desde comienzos del siglo pasado. Tan temprano como en 1908, se estableció que cuando un letrado faltaba al buen carácter moral necesario para ejercer la profesión, este Tribunal tenía la prerrogativa de separarlo del ejercicio de la abogacía. *In re* Abella, 14 DPR 748, 751 (1908).

Cónsono con esa realidad, este Tribunal ha sido consecuente en reiterar que "la facultad de admisión de aspirantes al ejercicio de la abogacía, es más de poder judicial que de ningún otro poder". *Ex parte* Boneta, 39 DPR 154, 165 (1929); véase, además, *In re* Casablanca, 30 DPR 399, 402 (1922). Asimismo, se ha expresado que:

> si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia, si ellos cooperan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos encuentran, por virtud de las disposiciones

de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a los que pretenden ser sus auxiliares y cooperadores en la más alta misión que puede encomendarse a un hombre o a un conjunto de hombres. Ex parte Boneta, *supra,* págs. 165-166. *Véase*, además, *Ex parte* Jiménez, 55 DPR 54, 57 (1939).

A tenor con estos pronunciamientos, aún antes de la aprobación de la Carta Magna que actualmente rige nuestro ordenamiento jurídico, este Tribunal había sido enfático en delimitar que la admisión y exclusión de los abogados emanaba del poder judicial y no del ejercicio de un poder ministerial. *Ex parte* Boneta, *supra*. *Véase*, además, G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 Rev. Jur. UPR 729, 769 (1999).

Este proceder fue validado mediante la aprobación de la Constitución de Puerto Rico en 1952. Allí, expresamente se estatuyó que el Poder Judicial recaería sobre el Tribunal Supremo, además de que se le facultó para adoptar reglas en torno a la administración de los tribunales. Const. ELA, Art. V., LPRA, Tomo 1. Por consiguiente, de esta manera se validó que es en esta Curia donde recae la responsabilidad de regular la profesión legal. Es a este Tribunal al que, en el ejercicio de su poder judicial, le corresponde determinar los parámetros bajo los cuales se regirán los letrados como funcionarios de esta Rama de

Gobierno. En palabras del profesor Guillermo Figueroa Prieto,

> [f]ue la intención de los delegados a la Asamblea Constituyente proteger la independencia de la Rama Judicial, por lo que concederle a dicha rama de gobierno el control primario sobre la abogacía estaría en armonía con tal intención. Por lo tanto, con la aprobación de nuestra Constitución, **quedó ratificada** la acción que el Tribunal Supremo había iniciado a través de su jurisprudencia y que había tenido el efecto de apartarnos de las raíces históricas de la reglamentación de nuestra abogacía. Ello es así, puesto que el poder sobre la abogacía en España es atributivo legislativo y no judicial. Figueroa Prieto, *supra*, pág. 771. (Énfasis suplido).

En consecuencia, con la aprobación de la Constitución, resulta inequívoco que este Tribunal tiene el poder para regular la profesión legal en Puerto Rico. Es con esta autoridad que esta Curia continúa reiterando el aludido poder y determina los parámetros para el ejercicio de la abogacía y la notaría. Véanse, a modo de ejemplo, *In re* Wolper, res. el 2 de agosto de 2013, 2013 TSPR 86, 189 DPR ___ (2013) (*Per Curiam*); *In re* Reichard Hernández, 180 DPR 604 (2011); *In re* Córdova Gónzalez, 135 DPR 260 (1994) (*Per Curiam*); *In re* Freytes Mont, 117 DPR 11 (1986) (*Per Curiam)*; *In re* Liceaga, 82 DPR 252 (1961); *In re* Andréu Ribas, 81 DPR 90 (1959).

De igual forma, hemos expresado que "[n]uestro poder inherente para regular la profesión legal conlleva la enorme responsabilidad de velar porque los candidatos que vayan a ejercer la profesión estén capacitados y sean aptos para cumplir fiel y cabalmente las serias responsabilidades que entraña la abogacía". *In re* C.R.R., 144 DPR 365, 369 (1997) (*Per Curiam)*. Además, se ha reconocido que "[l]a

admisión al ejercicio de la abogacía es un asunto delicado, revestido de profundo interés público". Íd.

En armonía con nuestro deber y la alta responsabilidad que éste entraña, se instituyó un Reglamento para la Admisión de Aspirantes al Ejercicio de la Abogacía y la Notaría. *Véase* Junta Examinadora de Aspirantes al Ejercicio de la Abogacía y la Notaría, Reglamento para la Admisión de Aspirantes al Ejercicio de la Abogacía y la Notaría, aprobado en junio de 1998 y enmendado el 12 de agosto de 2013. Asimismo, se instauró un procedimiento disciplinario aplicable a las personas admitidas al ejercicio de la profesión legal en Puerto Rico. *Véase,* Regla 14 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. A tenor con los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX, este Tribunal también estableció los parámetros de conducta que las personas admitidas deberán profesar en aras de mantenerse ejerciendo la profesión.[132]

Todo esto en virtud del poder que nos fue constitucionalmente cedido y mediante el cual tenemos el deber ineludible de regular la profesión legal. Por consiguiente, a la luz de nuestro poder inherente, hemos establecido los procedimientos adecuados para descargar nuestra responsabilidad. De esta manera, además de ejercer nuestro Poder Judicial, salvaguardamos tanto la independencia, como

---

[132]Cónsono con estas medidas reguladoras, también se implementó el Programa de Educación Jurídica Continua, cuya misión es el "mejoramiento académico de toda persona que ejerce la profesión del Derecho". Tribunal Supremo de Puerto Rico, Reglamento del Programa de Educación Jurídica Continua, aprobado el 8 de abril de 2005, según enmendado.

la dignidad y la autoridad que le han sido concedidas a la Rama Judicial en estos aspectos.

Sin duda, esta independencia judicial es un corolario de la doctrina de separación de poderes que rige nuestro ordenamiento. Es norma ampliamente conocida que nuestro sistema republicano de gobierno está sustentado en una división tripartita de poderes entre la rama ejecutiva, legislativa y judicial. *Véase* Const. ELA, *supra*, pág. 271. Es a partir de estas distinciones que se reconoce la doctrina de separación de poderes como un "principio [que] persigue salvaguardar la independencia de cada rama del Gobierno y proteger la libertad de los individuos frente a una peligrosa acumulación de poder en una sola rama". Clases A, B y C v. PRTC, 183 DPR 666, 681 (2011). *Véase*, además, Colón Cortés v. Pesquera, 150 DPR 724, 750 (2000).

Nótese que el principio de separación de poderes es uno multidimensional. En esencia, protege la independencia de cada Rama de Gobierno en asuntos que son de su exclusiva jurisdicción. Además, establece un sistema de pesos y contrapesos cuando median funciones compartidas entre las ramas y, finalmente, protege a los ciudadanos de la acumulación indebida de poder por parte de alguna de estas ramas. Mediante este principio se definen cuáles son los contornos de los poderes de las Ramas de Gobierno, de manera que se "pueda promover el más eficiente funcionamiento del sistema". Clases B y C v. PRTC, *supra*.

Ante ello, la doctrina delimita que la separación de poderes no implica que las Ramas de Gobierno operan en el vacío, completamente alejadas unas de las otras. Banco Popular Liquidador v. Corte, 63 DPR 66, 71 (1944).[133] Por el contrario, al adoptar este sistema republicano de gobierno, lo que se pretendió evitar fue que una de las ramas se excediera del balance que debe existir durante su interacción, y el poder se concentrara en una sola de las tres esferas. Íd., pág. 72. Por ende, es imprescindible "que cada una acepte y respete la autoridad de las otras y entienda la interrelación de sus funciones". Silva v. Hernández Agosto, 118 DPR 45, 57 (1986).

En palabras de Don Raúl Serrano Geyls, lo que subyace es delimitar **"¿quién tiene poder para qué?"**. R. Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, San Juan, Programa de Educación Legal Continuada de la UIPR, 1986, Vol I, pág. 571. (Énfasis suplido). Véase, además, Clases A, B y C v. PRTC, supra. Es decir, en este caso, corresponde contestar la siguiente interrogante: ¿quién tiene el poder para regular o no cualquier variante de la colegiación de los abogados y las abogadas en nuestro ordenamiento jurídico? De la discusión que antecede, es evidente que esta función le compete exclusivamente al Poder Judicial. No contestar tajantemente esta pregunta implicaría claudicar a la defensa de la independencia judicial y, peor aún, dejar al arbitrio

---

[133] Véanse, además, Misión Ind. P.R. v. J.P., 146 DPR 64, 81 (1998); Noriega v. Hernández Colón, 135 DPR 406 (1994).

de las ramas políticas la intromisión en un componente esencial de la regulación de la práctica de la abogacía.

Es por ello que no compete a la Asamblea Legislativa inmiscuirse en ninguna de las materias contenidas en la ley bajo examen. Ante ese cuadro, no nos encontramos ante una típica situación del balance que requiere el proceso de interacción entre algunas de las Ramas de Gobierno. Por el contrario, en este escenario, la Asamblea Legislativa intervino flagrantemente con la independencia de la Rama Judicial y sus funciones constitucionales, lo cual es un componente ínsito de la separación de poderes. *In re Solicitud Cepeda García*, 130 DPR 18, 23 (1992) (*Per Curiam*). Este proceder es simplemente impermisible.

Al aprobar la Ley Núm. 109-2014, sin duda, la Asamblea Legislativa se inmiscuyó con nuestra independencia judicial, en claro detrimento del principio de separación de poderes. Ello, debido a que además de imponer la colegiación obligatoria y el pago de una cuota anual como condición para poder ejercer la abogacía, mediante la aprobación de la referida ley específicamente se facultó al Colegio de Abogados y Abogadas de Puerto Rico (Colegio) para intervenir con este Tribunal en el proceso de implementación del Código de Ética Profesional que rige la conducta de los abogados admitidos a la profesión. *Véase* Art. 3 de la Ley Núm. 109-2014. En relación a este particular, también se le permitió investigar y recibir quejas de acuerdo al procedimiento establecido en la misma ley. *Véase* Art. 4 de la Ley Núm. 109-2014. Al mismo tiempo, se

autorizó a que la Comisión de Ética del Colegio o el organismo para estos fines autorizado, promulgara un reglamento relativo a los derechos de las partes involucradas. Mediante el referido artículo, también se estableció que el informe emitido por el organismo investigador debía recibir el mismo trato que los presentados, ante esta Curia, por la Oficina de la Procuradora General y la Administración de los Tribunales al momento de presentarse una querella contra un letrado. Íd. Así, las ramas políticas se interpusieron con nuestro poder de reglamentar los procesos disciplinarios contra los abogados y abogadas admitidos a la profesión legal.

En consecuencia, por el contenido de estas disposiciones, no nos encontramos ante la dimensión que requeriría examinar si se ha lacerado el balance de los pesos y contrapesos que debe existir entre las Ramas de Gobierno por tratarse de una legislación que regula una materia ajena a la función legislativa. Ello, debido a que como los abogados son funcionarios del Tribunal en el ámbito de la regulación que persigue la ley impugnada, esta es una función que solamente le compete al Poder Judicial. Permitir la intromisión de la Asamblea Legislativa en estos asuntos o entrar a dilucidar si su actuación puede ser considerada como directiva es improcedente. Resulta evidente que tal proceder lacera la separación de poderes que sustenta nuestro sistema de gobierno en tanto atenta contra la independencia de esta Rama. Tal como expresamos en Colón Cortés v. Pesquera, *supra,* pág. 752, "la *doctrina de separación de poderes*

*significa que la función judicial solo puede ser llevada a cabo por la Rama Judicial*, y de la misma manera, que labores no judiciales deben ser dejadas para la correspondiente actuación de las otras ramas". (Citas omitidas).

En fin, como es sabido, una ley se presume constitucional hasta tanto se resuelva lo contrario. Aut. Carreteras v. 8,554.741 M/C I, 172 DPR 278, 298 (2007). Por ello, al ejercer nuestra facultad revisora debemos auscultar si existe alguna interpretación razonable del estatuto impugnado. Es decir, debemos estar "conscientes de la deferencia exigida al ejercicio del Poder Legislativo según el mandato constitucional, **conforme con los roles adscritos a cada una de las ramas gubernamentales según el esquema de separación de poderes**". E.L.A. v. Northwestern Selecta, 185 DPR 40, 71 (2012). (Énfasis suplido). *Véanse*, además, Rexach v. Ramírez, 162 DPR 130, 149 (2004); Nogueras v. Hernández Colón, 127 DPR 405, 412 (1990). No obstante, una ley puede ser declarada inconstitucional tanto de su faz como en su aplicación. E.L.A. v. Northwestern Selecta, *supra,* pág. 71. En el primer caso, debemos evaluar si el vicio surge de la propia ley, mientras que en el segundo debemos auscultar el contexto en el que la medida impugnada fue empleada. Íd., págs. 71-72.

Ante esta normativa, abordamos la legislación en controversia y nos es forzoso concluir que su totalidad es inconstitucional de su faz. Como hemos descrito, la legislación aprobada condiciona la práctica de la abogacía con la colegiación obligatoria e incluye disposiciones que inciden con el procedimiento disciplinario que ha

empleado esta Curia para, en el ejercicio de sus funciones judiciales, regular la profesión legal. Aun cuando intentáramos ser deferentes con la Asamblea Legislativa, su actuación incide directa y desmedidamente con la función judicial de regular la profesión de la abogacía. Es decir, por tratarse de una acción patentemente inconstitucional que pretende regular una materia que compete al Poder Judicial, no procede respetar la voluntad legislativa bajo examen, ni mucho menos, adscribirle visos de legalidad considerándola como una legislación directiva.

II

Los planteamientos aquí vertidos me obligan a disentir por ser la **totalidad** de la Ley Núm. 109-2014 inconstitucional de su faz. Nuestra Constitución no nos permite avalar el proceder de la Asamblea Legislativa al intentar acaparar una profesión que se encuentra regulada por el Poder Judicial. Como hemos expuesto, esta actuación resulta violatoria de prominentes principios constitucionales que rigen nuestro ordenamiento jurídico.


Luis F. Estrella Martínez
Juez Asociado